CASE 77—ACTION FOR BREACH OF CONTRACT—DEC. 14.

# Clark, & c. v. Stanhope.

### APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL.   REVERSED.

INFANTS—CONTRACT FOR SALE OF REAL ESTATE—CONTRACT ILLEGAL IN
PART VOID ALTOGETHER.

Held:  1. As the land of an infant can be sold only at public out-
cry, to the highest and best bidder, on such terms as the chan-
cellor may direct, a contract for the sale of an infant's land
which contemplates that the purchaser, or some one for him,
shall become the accepted bidder at a public sale, is void; the
tendency of such a contract being to smother bidding.

2. A contract for the sale of land owned jointly by an infant and
another, being illegal as to the infant, is void altogether, as the
parts can not be separated, and therefore damages can not be
recovered of either party for a breach of the contract.

BRECKINRIDGE & SHELBY, ATTORNEYS FOR APPELLANT.

J. S. SMITH OF COUNSEL.

This case is:   H. H. Stanhope, knowing all the parties and all the
facts, knew that the land in the petition described, belonged
jointly to Lydia S. Clark and Metta Blackford, an infant, of
whom Ollie. Blackford was guardian; that there was pending
in the Jessamine Circuit Court an action to sell said land un-
der the direction of that court; that no title could be made to
the whole of that land except under a decree of that court and
after a public sale by the officer of that court; and, knowing
this he entered into the contract set out, by which it was sub-
stantially agreed that a decree should be obtained for the pur-
pose of selling that land to him at a fixed price of $2,500.   It
therefore, was an agreement to affect the decision of the court,
to obtain a decree, not for the best interest of the infant sole-
ly, but for the purpose of making the sale at a specified price,
not for the purpose of selling in good faith at public auction to
the highest and best bidder, but that the sale should be a mere
sham, a mere form, complying with the legal requirements of
the statute, but in substance it should be a private sale, through

Clark, &c. v. Stanhope.

this form, to him. There was a decree obtained in accordance with this agreement; there was a nominal sum bid by him; his claim is practically the difference between what he agreed to give and what was obtained at that sale; and that is precisely what the jury gave him, plus $5.00 he paid as earnest money.

1. Now, we contend: *First*, That this falls within the rule, "that all agreements relating to proceedings in courts, civil or criminal, which may involve anything inconsistent with the impartial course of justice, are void, although not open to the charge of actual corruption, and regardless of the good faith of the parties or the fact that no evil resulted therefrom." Beach on the Modern Law of Contracts, vol. 2, sec. 1534; Pollock's Principles of Contract, and the authorities referred to in both books; 2 Beach, and note, sec. 1538; Davizac v. Seeler, 12 Ky. Law Rep. 599.

2. *Second*, This case is clearly within the principle that "Matters affecting particular legal duties of individuals whose performance is of public importance, can not be made the subject of a private contract." Cunningham v. Cunningham, 18 Ben. Mon., 24; Porter v. Jones, 52 Mo., 399.

3. We submit that a peremptory instruction in favor of the plaintiff was evidently erroneous, even if we are mistaken in our view of the law as set out above. We contend that the plaintiff elected not to stand by his agreement when he declined the offer of Mr. Blackford, and that this is a mixed question of law and fact which it was the duty of the court to submit to the jury.

4. We also confidently submit that the whole testimony shows that the verdict is excessive.

BRONSTON & ALLEN, Attorneys for appellee.

1. The fact that the land sold at public sale for more than the contract price which Stanhope agreed to pay, shows that there was no stifling of competition, or any desire on Stanhope's part to prevent the land from being sold at its best figure.

2. Whether the contract with the guardian of the infant was a valid and enforcible one or not, the defendants, Lydia S. Clark and Will F. Clark, were *sui juris* and laboring under no disability, and they had a right to make this contract to sell and convey to Stanhope the whole tract, and they obligated themselves to perfect the title in such a way that they could convey the whole tract of land to him. Day v. Burnham, 11 Ky. Law Rep., 292; Logan and wife v. Bull, 78 Ky. Law Rep., 608, sec. 27, Ky. Code.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant, Mrs. Lida Clark and her sister, Metta Black-ford, who was an infant, owned a farm of ninety-eight acres in Jessamine county. Their mother, Mrs. Ollie Blackford, was the guardian of the infant, Metta. On October 31, 1896, a written contract was made between Mrs. Ollie Blackford, as guardian for Metta Blackford, and Mrs. Clark and her husband, of the one part, and H. H. Stan-hope, the appellee, of the other part, by which they sold him the farm for $2,500; one-third to be paid in cash when the deed was made, and the balance in one and two years; $5 being paid cash at the time; possession to be given on March 1st following; and the deed to the farm to be made as soon as a decree could be had from the court. A peti-tion was thereupon filed for the sale of the land, in the Jes-samine Circuit Court, on the ground, it appears, that it was incapable of division, and that the interest of the parties required its sale as a whole. The court ordered the land to be sold, as prayed. The sale was made on February 15, 1897.

Appellee Stanhope bid $25 an acre for the land, and then stopped bidding. Mrs. Clark then, at his request, bid for the land, and ran it up to $29.55 an acre, when it was knocked off to John Blackford, who lived adjoining the land, and was an independent bidder. The evidence is a little con-fused and conflicting as to what occurred after this sale, but taking it all together, we think it shows satisfactorily that John Blackford offered to let appellee have the land at his bid, and that appellee wanted Mrs. Clark to give him her note for the excess the land had sold for at this sale over and above the amount he was to pay under his con-tract. This she declined to do, although she appeared will-ing to lose half the amount, saying that only half of the

land was hers. The sale to Blackford was confirmed, and appellee then filed this suit against Mrs. Clark and her husband to recover damages of them for the breach of their contract for the sale and conveyance of the land to him. In the court below the jury, under the instructions of the court, fixed the damages at $400, and from the judgment entered on this verdict the Clarks have appealed.

The contract sued on shows on its face that the parties were undertaking to make a trade for the sale and conveyance of the farm in which the infant, Metta Blackford, owned an undivided one-half interest, and that in order to carry out this contract a decree had to be obtained from the Jessamine Circuit Court. In making a contract of this kind, persons are not only presumed to know the law, but must take notice of it. A guardian has no authority to sell his ward's land. The land of an infant can only be sold in certain states of case, pointed out in the statute, and must then be sold at public outcry, to the highest and best bidder, on such terms as the chancellor may direct; and in cases of this character the share of the infant remains a lien on the land until his majority, or until the guardian executes an additional bond, to be approved by the chancellor. The clear intent of all this is to protect the infant as to his real estate, and, in all cases where a sale is had, to guard against his interest being sacrificed by his guardian or others. Any contract which tends to smother bidding at the sale of an infant's real estate is clearly contrary to the policy of the statute, and will not be enforced.

In this case appellee could not but understand that the contract in question could not be carried out unless he or one of the other parties to the contract, or some one for them, bought the land, and that his bargain was subject to this contingency.

No better illustration of the evil of such contracts can be given than this case presents; for appellee started the land practically at the amount he agreed to pay for it, and, in order to carry out the contract without loss, it was incumbent on the guardian of the infant, as well as her sister, to prevent the land from selling for what it was worth. If this had been done the land would have sold for $400 less than it brought, and a loss of $200 would have been inflicted on the infant. The law will not enforce for parties contracts which it condemns. The land was indivisible. The contract was for the sale of the tract as an entirety, including the share of the infant, and, being illegal as to the infant, is bad altogether.

In such cases the courts leave the parties as they find them. In Bishop on Contracts the rule is thus stated: "No agreement between parties to do a thing prohibited by law, or subversive of any public interest which the law cherishes, will be judicially enforced." Section 470. "The mere tendency of a contract to promote unlawful acts renders it illegal, as against the policy of the law, without regard to any circumstances indicating the probable condition of such acts." Section 476. "A contract illegal in part and legal as to the residue is void as to all when the parts can not be separated."

Section 487. Further on, in discussing contracts partaking of unlawful conspiracy, the learned author says: "The doctrine of this subtitle is that a contract which embodies any indictable confederation, whether to injure the public or an individual, is void as against law; and, short of this, one merely tending to the same mischief is void as against public policy." Section 522, "Auction sales are within both private and public consideration. They are the means of converting things into money under urgent circumstances,

of settling estates of deceased persons, and the like, so that the interest both of the individual and of the public requires them to be conducted with freedom and fairness, and agreements contravening these interests are void." Section 528. A number of authorities on this subject are collected in the note to the case of Herndon v. Gibson (S. C.), 17 S. E., 145, 20 L. R. A., 545. There are peculiar reasons why this doctrine should be applied to a contract, the necessary effect of which was to prevent the land of an infant from selling for its full value, when sold, under our statutes, by order of the chancellor, to the highest and best bidder. It follows, therefore, that the court below should have instructed the jury peremptorily to find for the defendant. Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

Petition for rehearing filed by appellee and overruled.