## Caulder, et al. v. Elmore, et al.

(Decided October 19, 1916.)

### Appeal from Garrard Circuit Court.

1. Judgment—Proceedings to Vacate—Parties.—A purchaser at a decretal sale becomes a party to the proceedings when the report of sale is filed showing him to be the purchaser, and if the judgment under which the sale was had was procured through fraud practiced by him, resulting in benefit to him, as such purchaser, he thereby becomes the "successful party" as contemplated by subsection 4 of section 518 of the civil code against whom the proceeding provided by such section may be filed.

2. Judicial Sales—Judgment—Proceeding to Set Aside.—A contract whereby a price is agreed to be paid for the land of infants, or that in which they have an interest, is not enforcible, but if the land should be sold under a valid judgment of the court, and the proposed purchaser in such contract should be the successful bidder at the judicial sale, the fact of the existence of the contract does not ipso facto render the judgment void; nor will it authorize a setting aside of the sale, unless it be shown that the existence of the contract had the effect to stifle the bidding for the land at the judicial sale.

3. Judgment—Proceeding to Set Aside—Evidence.—In a proceeding under section 518 of the civil code to set aside a judgment for fraud practiced by the successful party in which the alleged fraud is charged to lie in the misrepresentation as to the value of the land to be sold under a judgment to be obtained, and a misrepresentation as to the value of the land in which the proceeds are to be invested, the evidence examined and found that it fails to establish the alleged fraud, and also that it fails to establish that a written contract entered into prior to the rendering of the judgment ordering a sale had any suppressing effect on the bidding on the land at the decretal sale.

J. J. GREENLEAF for appellants.

R. H. TOMLINSON, L. L. WALKER, T. L. EDELEN and CHENAULT, WALLACE & WALLACE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Auxia Caulder, was formerly the wife of John Wages. There was born to her as a result of that union the other five appellants, who are infants; but the mother, after the death of the father, John Wages, married Dallas Caulder, who, at the time, was the father of four children by a former marriage. During the life of John Wages he and his wife purchased a farm in

Garrard County, consisting of 216 acres, known in this record as the Walden farm, and to which we shall hereafter refer as the Garrard County farm. The deed was made jointly to husband and wife, they each taking a one-half undivided interest therein, but the purchase money was entirely paid by the wife out of her own means, with the exception of a deferred payment, including interest, of $3,487.72 which she afterwards paid. The husband died intestate, and his children inherited his one-half interest, subject to the dower interest of the appellant Mrs. Caulder. The Garrard County farm was purchased in 1906, and was in possession of and, at least to some extent, occupied by the purchasers, up until the first of 1909, and for that year it was rented to the appellee, Elmore.

On January 28, 1908, the appellant, Mrs. Caulder, filed in the Garrard Circuit Court, in the name of herself, individually, and as guardian for her five infant children, a petition ex parte, asking for the sale of the Garrard County farm for the purpose of paying the unpaid purchase money, and for reinvestment, and perhaps other grounds, which proceeding progressed to judgment, but it was provided therein that no sale should be made by the master commissioner until directed by the appellant, Mrs. Caulder, or her attorney. Things remained in this condition until February 17, 1909, when there was filed in the ex parte proceeding a paper, styled an amended petition, converting the proceedings into one inter partes, the guardians for the infant children being plaintiffs, and their respective wards made defendants. In this pleading the original grounds for the sale are more fully stated, and perhaps others relied on, and all necessary allegations to make the judgment for the sale of the land a valid one, it being conceived, and correctly so, that the judgment on the ex parte proceedings, because of the failure to take certain requisite steps, was totally void. Upon the filing of this pleading the former judgment was set aside and the cause progressed, under the style of the amended pleading, to a judgment ordering the sale of the Garrard County farm, as prayed for in the pleading. This judgment was rendered on July 9, 1909. The sale was made by the master commissioner some time during the following August, was reported by him to the court and was confirmed December 1, 1909. In the judgment confirming the sale, the

commissioner was ordered and directed to reinvest the proceeds in a farm located in Madison County, consisting of 257 acres, and at that time owned by David Chenault. This was done, and the report of the commissioner showing that fact was filed and confirmed. After this the appellant, with her children, moved to the Chenault farm, which we will hereafter call the Madison County farm. At the sale made of the Garrard County farm, appellee, Elmore, became the purchaser, but before confirmation of the sale he transferred his bid to David Chenault, his father-in-law, and the deed executed by the commissioner was made to him, but he subsequently deeded one-half of the farm to his son-in-law and appellee, J. W. Elmore. On December 16, 1911, more than two years after the last judgment in the case, the appellant, for herself, and as guardian for the infant children, filed a written motion in the case, seeking to set aside the judgment of the sale of the Garrard County farm and the reinvestment of its proceeds in the Madison County farm, and to have an accounting of the rents, improvements, etc., and to this end asked that the cause be referred to the master commissioner for the purpose of taking proof and reporting in regard to these matters. The grounds urged in the written motion for the relief sought are numerous, but among them are that no bond was executed, as required by the Code in the sale of infants' property, and that the sale was void because there was a written contract entered into between J. W. Elmore, who was acting for himself and as agent for his father-in-law, and the appellant, who was acting for herself and as guardian for her infant children, previous to the judgment of sale, and which contract stipulated the price that should be paid for the Garrard County farm, and the Madison County farm, into which the proceeds should be invested. The proceedings on this motion were afterward revived against the executors and devisees of David Chenault, he having in the meantime died, leaving a will. After such preparation as the parties saw proper, the motion to set aside the judgment ordering the sale of the Garrard County farm and the reinvestment of its proceeds in the Madison County farm was overruled on September 7, 1912; an appeal from that judgment was prosecuted to this court, and the judgment was affirmed on September 24, 1913. Caulder, et al., v. Chenault's Ex'r, 154 Ky.

777. After the action of the court overruling the motion, and on October 12, 1912, this independent suit was filed by Mrs. Caulder, for herself and as guardian for her five infant children, against the appellee, Elmore, individually, and as executor of David Chenault and the latter's heirs and devisees, seeking to obtain the same relief as was sought in the original motion. It is claimed, however, in the petition, that the judgment of sale was procured by fraud, which, we gather from the pleadings and contention of counsel, consists of the written contract whereby the appellee, Elmore, agreed to purchase the Garrard County farm at $17,000.00, and Mrs. Caulder agreed to take in exchange and as part payment therefor the Madison County farm at $13,000.00; and that the respective values of these two farms were fraudulently represented to her, as it is contended that the Garrard County farm was worth much more than $17,-000.00, and the Madison County farm was worth considerably less than $13,000.00, and that she was greatly imposed upon in the transaction, as she was illiterate and ignorant as to their real value. It is furthermore alleged that her attorney conspired with the appellee, Elmore, to perpetrate such fraud upon her, and aided and assisted in its perpetration. The petition was afterwards amended, and both pleadings were controverted of record. An abundance of proof was taken by each side to the controversy, and upon final hearing the court dismissed the petition, which is followed by this appeal. A more detailed statement of the facts concerning the order of sale of the Garrard County farm and the reinvestment of its proceeds as well as the steps leading up to that judgment, will be found in the former opinion.

At the beginning it is urged by appellees that this proceeding, if allowable at all, necessarily comes under the provisions of Sec. 518 of the Civil Code of Practice, and that inasmuch as one of the chief grounds relied upon for the relief is subsection 4 of that section, reading: "For fraud practiced by the successful party in obtaining the judgment," the suit cannot be maintained because neither appellee, Elmore, nor David Chenault were parties to the proceeding under which the one farm was sold and the other purchased. We cannot agree with this contention. The rule is well settled in this State that a purchaser of land at a decretal sale becomes a party to the proceedings from the time the report of

the sale is made showing him to be the purchaser. If the judgment under which he purchased was obtained through or by any fraud practiced by him, or those beneficially interested in the property sold, or if the proceeds should be invested in other property, if such purchaser should be beneficially interested in the property purchased we feel safe in saying that such fraud might be reached and relief granted through a proceeding under section 518 of the Code. It is not necessary that the judgment sought to be set aside by such proceeding should have been rendered in favor of the party practicing the fraud; it is sufficient for the maintenance of the action if the one guilty of the fraud becomes a party to the proceeding and is benefited by the judgment. Lawless v. Sevier, 5th Ky. Law Rep. 239 (same case, 12th Ky. Opinions 231). The purpose of the subsection quoted is to furnish a remedy for relief against fraud practiced by a party who has succeeded beneficially by the proceeding, and who, in some way, becomes a party to the proceeding before its final disposition. So we conclude that the action is properly maintainable under section 518 of our civil Code.

All of the questions sought to be raised by the present proceeding, with the possible exception as to the value of the Garrard County farm, are presented by the motion to set aside the judgment hereinbefore set out, and which was decided adversely to the plaintiffs in the present proceeding, both by the lower court and this court. It would therefore seem that the matters sought to be litigated here are *res adjudicata* and cannot be litigated in this proceeding between the same parties; but, inasmuch as it is vigorously insisted that all the facts were not before the court upon the trial of that motion, and that all the circumstances surrounding the execution of the contract were not developed therein, we have concluded to look into the merits of the case as presented by the testimony heard upon the trial.

The contract between appellee, Elmore, and the appellant, for herself and as guardian for her children, which is so vigorously assailed, was executed on Jan. 20, 1909, and, aside from provisions which we have stated, it was further provided in substance that if at the judicial sale of the Garrard County farm it should bring exceeding the price agreed upon in the contract, Mrs. Caulder should lose the part of the excess that would

be going to her, and should restore to her wards the
part of the excess that would be going to them. It might
be here stated that Mrs. Caulder, since the death of her
first husband, has purchased the interest of his four chil-
dren by his first wife, which made her the owner of not
only one-half of the Garrard County land, which she ob-
tained in the deed for it executed to herself and hus-
band, but also of four-ninths of the other one-half, and
she is entitled to dower in the remaining five-ninths of
that one-half, and having paid off the unpaid purchase
money, she would at least be entitled to some equitable
interest in the remaining interest of her children. This
would give her practically five-sixths of the entire farm,
to say nothing about her claim that she is the equitable
owner of the entire farm, having paid all of the purchase
money. This is mentioned for the purpose of showing
not only the small interest of the infants (which, how-
ever, does not affect the legal questions concerning their
rights), but to further show that unless the land brought
greatly more than the price stipulated in the contract,
the amount for which she would have to account to her
children would be comparatively small, and she, being
an adult, with the power to contract, cannot complain
of any loss which she might sustain if the contract was
fairly made. It is insisted, however, that the mere fact
of the existence of the contract justifies the setting aside
of the sale, and we are referred to the following cases
from this court in support of such contention: Kinslow
v. Grove, 98 Ky. 266; Clark v. Stanhope, 109 Ky. 521,
and Hulswede v. Churchman, 111 Ky. 51. It would serve
no useful purpose to encumber this opinion with a reci-
tation of the facts appearing in those cases. It is suf-
ficient to say that they were each proceedings which, in
some way, sought to uphold contracts for the private
sale of infants' real estate, either by having a private
sale confirmed by the judgment of the court, as is one
of the cases, or by a suit based on a noncompliance with
such contract, as are the other cases. The contract in
the instant case is not sought to be upheld by any of
the parties thereto, as the proceedings are not based on
it. It is merely an incident in the case, and is eviden-
tiary only on the question of fraud. It might be that
if because of the contract the interest of the infants was
prevented from selling for a fair price equity would in-
terfere and set the sale aside, but such facts must be

made to appear from other evidence than the mere introduction of the contract. This question was gone into at considerable length in the preparation of the cause, as was also the respective values of the two farms, and the chancellor, after considering all the evidence, rendered the judgment appealed from.

A competitive bidder at the sale, who made several bids for the land, testified that he intended, and perhaps would have bid more than the land brought, but that he was told that if he did so and became the purchaser he might get into a law suit. It is not shown that the one who is alleged to have so advised him was in any way connected with the defendants in this proceeding, or any of them, and that individual even denies having given any such advice. The one who actually did the bidding for this supposed purchaser is an attorney, and he says in his testimony that he knew that whoever made the highest bid and became the purchaser of the land would get it. There was no report being circulated by the defendants, or anyone for them, nor anything to show any act, tending to stifle the bidding or to in any way prevent a fair, free and open sale. As a matter of fact the land did bring more than that agreed to be paid in the contract.

As to the value of the respective farms at the date of the contract (which was something over four years prior to the date of the taking of the testimony) a great mass of testimony was taken by both sides, and, as is usual in such cases, there was considerable contrariety in it. It would be useless to enumerate the witnesses, or their testimony. It is sufficient to say that probably an equal number of witnesses testified that the Garrard County farm sold for more, or as much, as it was worth, as did those who testified that it was at that time worth a greater sum, and the same is true with reference to the value of the Madison County farm. It should also be remembered that the evidence discloses that since the date of the contract the management of the Garrard County farm has been characterized by good husbandry, while the reverse is true as to the Madison County farm. With conditions thus existing at the time the witnesses testified, it is quite probable that their testimony was more or less warped by the then conditions of the two farms. At that time the proof tends to show that the Garrard County farm was increasing in value, while the

Madison County farm was diminishing in value. Under such circumstances, the remarks of this court in the case of Dotson v. Norman, 159 Ky. 786, where similar circumstances were being considered, are pertinent. They are:

"In respect of the charge of inadequacy of consideration when relied upon as ground for the cancellation of a conveyance, the evidence upon this issue is to be weighed by the chancellor and its probative force estimated and determined in much the same manner as evidence is weighed by a jury. The chancellor may, as a jury may, call to his aid in a matter of common knowledge his general experience as a man of affairs, and he may rationally accord to the testimony of a witness upon the subject of value a force proportionate to the freedom of the witness from any motive to misrepresent which might be considered as controlling. And he may give some weight to the fact that the opinion of witnesses testifying concerning values of land, as of a date prior to the development of coal operations thereon, when such witness is testifying after such development has demonstrated an increased value of such lands, is apt to be more or less influenced by the fact of such subsequent increase in value and present conditions. The controlling fact is the value of the property at the time of the conveyance; if the price paid was at the time and under the circumstances a fair price, then it matters not how many times the property has increased in value since the conveyance as the result of the discovery of resources then unknown, or as the result of the developments of resources then known but whose value was not then realized and appreciated."

What the chancellor may do in determining from the testimony what are the facts, this court may also do when called upon to determine the facts. The rule is to give some weight to the judgment of the chancellor in his finding of facts. If the testimony in its entirety leaves the truth of the matter in doubt, the finding of the chancellor will not be disturbed by this court on appeal. It is only when his finding is against the weight of the evidence, or the testimony is preponderating against his finding of fact, that we are authorized to disturb it. The most recent case from this court announcing the rule that should govern us in reviewing the judgment of the trial court in its finding of fact is that of

Ford Lumber and Mfg. Co. v. Arch Cornett, et al., 171 Ky. 404, wherein other cases upon the subject are referred to. Applying this rule, we are not prepared to say that the trial court was in error in his finding of facts on the issues presented.

We have not overlooked the authorities to which our attention has been called by appellant's attorney governing the courts in their dealings with contracts between persons occupying toward each other a confidential or fiduciary relation, as it is claimed in this case that appellee, Elmore, was the agent of Mrs. Caulder for the purpose of selling the Garrard County farm; but before those equitable rules can be called into application, the facts must exist authorizing it. As we have seen, the chancellor found that no such facts existed, and under the state of the record we are not prepared to question his findings. This litigation has been pending, in one way or another, for a long time. Everything growing out of either the contract or the judgment has become fully executed, and up to the time of the taking of the testimony there had been a considerable sum of money spent on the Garrard County farm in improving it in various ways, while the Madison County farm had been permitted to considerably diminish in value through bad husbandry, making it the more difficult to place the parties *in statu quo,* even should the facts justify it. Under such circumstances, the court should be fully satisfied from the proof that the fraud complained of is established before a rescission should be ordered, or the judgment annulled.

As we have shown, we are not so satisfied from the proof in this case, and the judgment appealed from being in accord with our views, it is affirmed.