## Wadlington's Guardian ad litem v. Wadlington's Guardian et al.

(Decided Dec. 21, 1934.)

S. D. HODGE, guardian ad litem, and JOHN O. HARDIN for appellant.

M. P. ELDRED for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming in part and reversing in part.

George Wadlington, a resident of Caldwell county, died intestate on September 15, 1927, and left surviving

him a widow, Mrs. Jerdie Wadlington, and five children, Georgia Evelyn, who has since married Boone Oliver, Mary Frances, Dorothy Mae, Willie Audrey, and Bayless Gordon, all of whom are infants, except Mary Frances, who has attained her majority since the death of her father. At the time of his death, deceased owned a farm of approximately 228 acres and some personal estate. Immediately after his death, B. M. Stone was appointed, and duly qualified as his administrator and is still acting in that capacity. In addition to looking after the settlement of the estate, he has been supervising and directing the operation of the farm for the widow and children. At the time of his death, Mr. Wadlington owed debts aggregating between $8,000 and $10,000, included in which was a note to the Union Central Life Insurance Company of Cincinnati, Ohio, secured by a mortgage on the farm. This mortgage originally was for $8,000 and was to be reduced by annual payment of $392.33. About 8 of these installments remained unpaid at the time of his death. Out of the proceeds of the sale of the personal property and profits derived from the operation of the farm, the administrator has paid the greater portion of the indebtedness.

Mrs. Jerdie Wadlington, as the duly appointed, qualified, and acting guardian of Georgia Evelyn Oliver, Dorothy Mae, Bayless Gordon, and Willie Audrey Wadlington, instituted this action against them and Boone Oliver, husband of Georgia Evelyn Oliver, alleging in her petition that 5 annual installments of $392.33 on the Union Central Mortgage remain unpaid; that the 1933 installment is past due and unpaid, and that the 1934 installment will soon be due and there are no funds and no source of income out of which same will be paid; that the insurance company has demanded payment of the past-due installment, has threatened to enforce the collection of the entire balance due under the provisions of the mortgage and to institute an action for the enforcement of its lien; that the balance of the mortgage is approximately $2,000. It is further alleged in the petition that, since his qualification as administrator, B. M. Stone has, from time to time, expended various sums of money from his individual resources for the maintenance, support, and education of defendants and for expenses incurred in maintaining and operating the farm, such sums aggregating $2,090.91; but it is shown by Mr. Stone's evidence that the sums thus expended by him aggregate $1,905.80. It is further alleged that,

in order to pay the indebtedness owed to Mr. Stone for the support and maintenance of the defendants, and in order to refinance the balance of the mortgage indebtedness due the Union Central Life Insurance Company and to prevent foreclosure and sale of the real estate belonging to the children of decedent, plaintiff has made application to the Federal Land Bank of Louisville for a loan of $2,700 and to the Federal Loan Commissioner for a loan of $1,200; that both applications have been approved and will be made, provided plaintiff, as guardian, obtains from the court authority to sign for the infant children proper notes and mortgages to secure the payment of such loans. The petition sets forth at length reasons why it will be to the interest of the defendants to permit her to secure these loans and to execute mortgages in their behalf to secure same. The prayer of the petition is that she be granted such authority.

Mary Frances Wadlington filed answer and petition to be made a party in which she expressed a willingness that the sum of $3,900 be borrowed from the Federal Land Bank and the Farm Loan Commissioner to pay the indebtedness set out in the petition, and that the farm be mortgaged to secure the payment of the sum borrowed, and her further willingness to sign notes and mortgages necessary to secure such loans, and she joined in the prayer of the petition.

On final hearing the chancellor granted the relief sought by the petitioner, and the guardian ad litem is prosecuting this appeal.

It is argued in effect by counsel for appellant that courts of equity have no inherent power to order a sale of the real estate of an infant, and all their powers in this respect are purely statutory, and that, in ordering and making a sale of such property, statutes must be strictly complied with; that statutory authority to sell an infant's real estate does not carry with it the implied power to authorize mortgaging it, and therefore the judgment of the lower court authorizing the guardian to mortgage the real estate of the infant defendants is void.

Counsel for appellees cites section 489 of the Civil Code of Practice which authorizes a sale of the real estate of an infant for the payment of debts of his ancestor or for the payment of his debt or liability in an

action brought against him by his creditors or in an action by a guardian against the infant for a sale of the real estate for the maintenance and education of the ward, etc., and asserts that, apart from any statute, courts of chancery have inherent power to order the sale of an infant's real estate; that the power of sale conferred by statute implies the power to mortgage for any of the purposes for which a sale is authorized when such is to the best interest of the infant.

Every question presented by this appeal was fully determined in the case of Barbara, Jeffre, and Joyce B'Hymer's Guardian Ad Litem v. Hattie B'Hymer, 257 Ky. 10, 77 S. W. (2d) 411, decided December 18, 1934. In that opinion there is an exhaustive review of the statutes relating to the sale of an infant's real estate, the powers of a guardian with respect to such real estate, and the cases bearing thereon prior to the enactment of chapter 146, Acts 1930 (Ky. Stats. Supp. 1933, sec. 2150a), which confers upon courts of equity jurisdiction to approve the sale and conveyance of an infant's real estate by his guardian for such reasons and upon such terms and conditions as shall be deemed for the best interests of the ward and when it is made to appear to the satisfaction of the chancellor that the sale is advisable. It is pointed out in the opinion that the power of courts over the real estate of infants is not inherent, but is derived solely from the statutes; and that courts can only dispose of an infant's real estate in strict conformity with the provisions of such statutes.

With respect to the scope and purpose of the act of 1930, supra, it is said:

"Section 2150a is a departure and a change in the statutes since our opinions in the cases, supra. It is our duty to observe and give full effect thereto. Considering section 2150a in connection with the other section, supra, it is our conclusion that the statutes now confer the authority upon the guardian of his ward to mortgage the land of his ward, and the jurisdiction upon the courts in a proceeding under section 2150a to approve his acts, where the land of the ancestor at the time of his death is encumbered with an enforceable lien or chargeable with valid debts of the ancestors, if the proof is clear, strong, unequivocal, and so convincing as to lead to one conclusion that such debts cannot be otherwise satisfied, and the so mortgaging it can

and will preserve the land until the ward arrives at full age. * * * To execute and deliver a mortgage in such circumstances is but exchanging a pressing and importunate creditor for one who is willing to let a loan stand for a number of years, or until after the ward arrives at the age of maturity. * * * We do not desire to be understood as departing from the rule applied in Posey, Receiver, v. Dugan, supra [59 S. W. 862, 22 Ky. Law Rep. 1104]; nor do we intend to depart from the rule that an infant's real estate can be mortgaged by the guardian for any debts except those of his ancestor and then in the circumstances stated herein, even with the approval of the court.''

The proof shows that, under the depressed conditions, the farm has a market value of about $6,500 and indicates that it is very fertile and productive; that under the management of Mr. Stone sufficient net revenue has been derived from it since the death of Mr. Wadlington to support the family except as above indicated and to retire approximately $6,000 of the indebtedness against the estate. The proof is clear and convincing that it would be to the interest of appellants to preserve the estate for them; however, as indicated in the B'Hymer Case, supra, the power of the court to confer authority upon the guardian to mortgage the land will be limited to such sum as may be necessary to pay the debt of the ancestor which, as shown by the pleading and proof, is the balance due on the mortgage to the Union Central Life Insurance Company. It therefore follows that the court was without power to confer authority upon the guardian to mortgage the land for the purpose of securing funds to pay the debt of Mr. Stone.

Wherefore the judgment is affirmed in part and reversed in part, with directions to enter judgment in conformity with this opinion.