# B'Hymer's Guardian ad litem v. B'Hymer et al.

(Decided Dec. 18, 1934.)

JOHN A. KIELY for appellant.

E. H. WALTON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

H. E. B'Hymer, a resident of Kenton county, Ky., died intestate March 24, 1934, leaving surviving him Hattie B'Hymer, his widow, Lucien B'Hymer, Ellsworth B'Hymer, Jeffre B'Hymer, Barbara B'Hymer, and Joyce B'Hymer, as his children and heirs at law. Lucien and Ellsworth were over 21 years of age. Jeffre, Barbara, and Joyce were infants under 21 years of age. Hattie B'Hymer was appointed and qualified adminis-

tratrix of the decedent's estate and as guardian of Jeffre, Barbara, and Joyce. At the time of his death, H. E. B'Hymer owned a tract of land in Kenton county, seven miles south of Covington, Ky., containing 100 acres, which was occupied as his home. Hattie B'Hymer, as his widow and guardian of Jeffre, Barbara, and Joyce B'Hymer, and Lucien and Ellsworth B'Hymer have occupied the land since the death of the intestate, and with Jeffre B'Hymer have managed it and cared for the obligations owing by H. E. B'Hymer at the time of his death. There remains unpaid and due of his debts $2,500; his creditors are demanding their payment.

Hattie, Lucien, and Ellsworth B'Hymer filed this action against Jeffre, Barbara, and Joyce B'Hymer, setting forth these facts, and sought authority and approval of the court for Hattie B'Hymer, as guardian of the named infants, to join with her, Lucien, and Ellsworth B'Hymer in obtaining a loan of $2,500 secured by a mortgage on the land owned by H. E. B'Hymer at his death, with which to pay the debts of the intestate and for which his land, as a matter of law, is liable.

The evidence shows the amount of the unpaid debts of the estate, to whom and for what they are due; and that the holders are threatening to sue to settle the estate of the intestate and sell his land to satisfy their respective debts; and that arrangements have been made to secure of the Federal Land Bank a loan sufficient for the purpose of satisfying his debts by the execution and delivery of a mortgage on his land by her individually and as guardian of the named infants with the adult sons. It is established that the land contains 100 acres and is in normal times of the value of $100 per acre or $10,000.

The question confronting us for determination is one of first impression in this jurisdiction. In Clark v. Stanhope, 109 Ky. 521, 59 S. W. 856, 857, we held that "a guardian has no authority to sell his ward's land. The land of an infant can only be sold in certain states of case, pointed out in the statute, and must be sold at public outcry to the highest and best bidder, on such terms as the chancellor may direct; and in cases of this character the share of the infant remains a lien on the land until his majority, or until the guardian executes an additional bond, to be approved by the chancellor." To the same effect see Cox, Guardian, et al. v. Burrus, 198 Ky. 48, 248 S. W. 239. In Kinslow v. Grove, 98 Ky.

266, 32 S. W. 933, 17 Ky. Law Rep. 845, we declared a court of equity has no power to confirm or approve a private sale of an infant's real estate, or to order a commissioner to convey it to a vendee under a sale made by an unauthorized person. In Connor v. Home & Savings Fund Bldg. Ass'n, 80 S. W. 797, 26 Ky. Law Rep. 109, the owner of a tract of land and her husband borrowed $650 and executed a mortgage thereon to secure the payment of the note evidencing the debt. She died leaving surviving two infant children. The mortgagee threatened to enforce his mortgage lien. Neither the husband nor the children had any means to pay the debt and applied to another for a loan of $850 with which to pay off the note of $650, together with street claims and back taxes which had accumulated against the property. The husband in his own right and as guardian of the infants filed an action in the circuit court of the county in which the land was located, setting out all the facts, and a judgment was entered granting the prayer; whereupon a mortgage was executed, the $850 obtained and $650 of it used in satisfying the mortgage given by the deceased and husband to secure the $650 debt and the remainder to the payment of street claims and back taxes which was directed to be done in the judgment. Thereafter, the husband made payments on the mortgage debt until it was reduced to $650, and then failed to continue the payments, when an action was instituted by the holder of the debt in the circuit court of the county in which the land was situated to enforce the lien existing in virtue of the mortgage executed and delivered in conformity with the judgment of the court. The mortgage was held void as to the infants under the authority of Posey, Receiver, v. Dugan, 59 S. W. 862, 22 Ky. Law Rep. 1104. This ruling was later approved by this court in Fidelity Trust Co. v. Butler et al., 91 S. W. 676, 28 Ky. Law Rep. 1268; Todd's Ex'r v. First National Bank et al., 173 Ky. 60, 190 S. W. 468.

In Soper et al. v. Foster et al., 244 Ky. 658, 51 S. W. (2d) 927, 929, we reviewed and cited a number of cases from this court dealing with the power of a court of equity to sell an infant's real property. We said:

"To protect him against the possibility of spoliation or waste, only the chancellor of a court of proper jurisdiction may dispose of an infant's land through the agencies of a court. That power is not

inherent. It is derived from the statutes, and its exercise is defined and limited by specific directions, which must be strictly observed. In a word, the court can dispose of an infant's land only in strict accordance with the terms of the statutory laws. They are its sole and only power and single source of jurisdiction. These are fundamental and inexorable principles, expounded and maintained from the beginning of our jurisprudence. Vowles' Heirs v. Buckman, 36 Ky. [6 Dana] 466; Elliott v. Fowler, 112 Ky. 376, 65 S. W. 849, 855, 23 Ky. Law Rep. 1676; Wyatt's Trustee v. Grider, 158 Ky. 440, 165 S. W. 420; Eversole v. Roberts, 239 Ky. 532, 39 S. W. [2d] 986.''

An examination of our statutes discloses that, at the time of the opinions in the cases, supra, the power of the court to direct a sale of an infant's real estate, except to settle the estate of his ancestor (section 428, Civ. Code Prac.), until in 1930, was limited to directing a sale, if and only when necessary to the proper maintenance and education of the ward or for the payment of his debts. Section 2039, Ky. Stats. At the time the cases, supra, were decided, section 2031 confined the power of the guardian over the real estate of his ward to leasing it until he arrived at full age, but no longer than a term of seven years. Sections 2031a-2 and 2031a-3 vested him with the authority to lease the real estate of his ward for the purpose of removing coal, oil, gas, and other minerals until he arrived at the age of 21. Section 4706, Ky. Stats., conferred upon him the privilege of investing his ward's funds subject to the approval of the court of equity.

We have consistently confined the power of the guardian over the real estate of his ward as conferred by these sections, as our opinions hereinbefore cited show, until the enactment of chapter 146 of the Acts of 1930, now section 2150a, Ky. Stats. Supp. 1933, which confers authority upon courts of equity to approve the sale and conveyance by a guardian of his ward's real estate, for such reasons and upon such terms and conditions as shall be deemed for the best interest of the ward, when satisfied the sale is advisable, etc. We have considered this section in Kentland Coal & Coke Co. v. Coleman's Guardian, 243 Ky. 184, 47 S. W. (2d) 1069, and in Sweeney's Guardian Ad Litem v. Sweeney's

Committee, 256 Ky. 117, 75 S. W. (2d) 749, wherein the validity thereof was sustained.

Section 2150a is a departure and a change in the statutes since our opinions in the cases, supra. It is our duty to observe and give full effect thereto. Considering section 2150a in connection with the other section, supra, it is our conclusion that the statutes now confer the authority upon the guardian of his ward to mortgage the land of his ward, and the jurisdiction upon the courts in a proceeding under section 2150a to approve his acts, where the land of the ancestor at the time of his death is incumbered with an enforceable lien, or chargeable with valid debts of the ancestor, if the proof is clear, strong, unequivocal, and so convincing as to lead to one conclusion that such debts cannot be otherwise satisfied, and the so mortgaging it can and will preserve the land until the ward arrives at full age.

It is perfectly logical that the statutes conferring the power of sale, and the duty upon the guardian of managing and preserving the estate of the ward, subject to the approval of the courts, in reason, be construed to mean that the guardian is thereby clothed with the power to mortgage the property for the debts of the ancestor of the ward, subject to the approval of the court, if and where there is but one conclusion shown by the proof, the land of the ward can be preserved by the guardian mortgaging it.

To execute and deliver a mortgage in such circumstances is but exchanging a pressing and importunate creditor for one who is willing to let a loan stand for a number of years, or until after the ward arrives at the age of maturity. The loan and mortgage are not to the disadvantage of the infants, but to their probable advantage. The charge upon the land is already against it, and will be eaten up at once by a sacrificial sale unless the loan is obtained as herein sought. The new mortgage simply postpones the devourment for a period of years beyond the maturity of the infants with the probability of finally saving the land or a large portion of it and the certainty of saving the land and profits arising therefrom during the period of the loan or until the infants arrive at 21 years of age when they may choose to pay or continue it for and during the life of the loan. The statute expressly provides the guardian must safely keep the property of his ward and deliver it to him at the close of his guardianship, in as good condition as

he received it. If the guardian and the court as his superior cannot allow, in the proven circumstances, the land to be mortgaged to pay the debts of the ancestor, the guardian cannot keep their estate at all and deliver it to them in any condition on arriving at full age. The mortgaging the land and the obtaining the money on a loan thereon will not add one dollar's worth of burden to it more than it already carries. This ruling is plainly in harmony with the policy of the statutes as well as the principles of equity. See Northwestern Guaranty Loan Co. v. Smith, 15 Mont. 101, 38 P. 224, 48 Am. St. Rep. 662; Smith v. Sackett, 5 Gilman (Ill.) 545.

The land sought to be sold is fertile, productive, and of the value of $10,000, which facts distinguish this case from one in which the infant's real estate is unproductive. We do not desire to be understood as departing from the rule applied in Posey, Receiver, v. Dugan, supra; nor do we intend to depart from the rule that an infant's real estate can be mortgaged by the guardian for any debts except those of his ancestor and then in the circumstances stated herein, even with the approval of the court.

Wherefore the judgment is affirmed. Whole court sitting.