## Hay's Committee v. Hay's Guardian.

(Decided Oct. 4, 1935.)

JAY W. HARLAN for appellant.

MARTIN GLENN amicus curiæ.

H. G. SANDIFER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Prior to July, 1922, Nora L. Hay inherited a tract of land of approximately 146 acres in Boyle county. On July 22, 1922, while under no disability, she borrowed $5,500 from an insurance company, for which she executed her note, and concurrently executed a mortgage on the tract of land to secure the payment of the note and interest.

In January, 1933, by proceedings had in the Boyle circuit court, she was adjudged to be of unsound mind, and was committed to the hospital at Lexington, where she has been under treatment since said date, and where she is at this time. At the same time the appellant was appointed committee to take charge of her property, and as such he duly qualified.

It appears from the petition and amended petition filed by the committee, from which the facts recited above are gathered, that at the time of the filing of same there was due on this lien indebtedness about $5,000. It is alleged that the insurance company has begun suit seeking to enforce its lien and collect its debt by a sale of the ward's real estate, and the committee pleads that the land, if sold at the present time, under existing conditions, will result in a serious loss of and injury to his ward's estate, because, as he claims, if offered at a forced sale, it will not now bring more than the lien debt existing against it, and he says it is worth a greater sum.

It also appears that the committee does not have in his hands other property of the ward sufficient to meet the obligation, and that the debt can be paid and the estate preserved by securing funds from the Federal Land Bank, or some other lending agency, on a long-term loan. In short, the petition alleges, in a general way, such facts as would indicate that it would be beneficial to, and not sacrificial of, the ward's estate to procure a long-time loan; the hope and belief evidently being that at some later date prices of real estate may advance so that the value of the ward's estate would be enhanced. A brief, amicus curiæ, of counsel for the Federal Land Bank, seems to indicate that the committee having proper authorization will be enabled to negotiate the loan through that agency.

The petition, which was in form seeking a declaration of rights of the committee, asked the court to say whether or not the committee had power and authority to execute a mortgage on behalf of the ward to secure a loan for the avowed purpose of extinguishing the existing debt.

Upon the filing of the petition the court below appointed a guardian ad litem for the defendant, who filed a general demurrer to the petition, which the court sus-

tained, and upon a declination by plaintiff to further plead, his petition was dismissed over objection and exception and an appeal granted.

The dominant question to be determined here is whether or not the appellant as committee, has the power to mortgage real property of his ward to pay a debt created by the ward at a time when the ward was laboring under no disability.

We are of the opinion that this question is fully answered by the court's analysis and construction of section 2150a, Ky. Stats. Supp. 1933, in the case of B'Hymer's Guardian v. B'Hymer et al., 257 Ky. 10, 77 S. W. (2d) 411, cited in Wadlington's Guardian ad litem v. Wadlington's Guardian, 257 Ky. 15, 77 S. W. (2d) 357.

In the first-named case the court gave quite a comprehensive history of the law with regard to the power and authority of a guardian or committee to deal with the property of wards. It went into details, citing older statutes and cases, whereby it was pointed out that the Legislature, as time advanced, gave to committees and guardians greater powers and authority, their actions on behalf of the ward, always, then as now, to be finally controlled by the judgment and wisdom of the chancellor, whose duty was and is to fully safeguard the interest of a person laboring under such disability as prevents untrammeled action on his or her part.

In that case the court very clearly construed section 2150a, Ky. Stats. Supp. 1933, which gave the representative the power to sell and convey real estate of an infant to pay the debts of an ancestor, to mean that the representative had the power, under the watchful eye of the chancellor, to mortgage the real estate for that purpose.

It would be difficult for the court, in the light of the B'Hymer opinion, to undertake to distinguish between the right to mortgage an infant's land to pay the debt of an ancestor, and the right to mortgage land of one lacking mental quality to deal for herself, to pay a debt which was created at a time when the ward was capable of dealing and trading, unhampered by any disqualification. Nor will the court undertake to go into a lengthy reasoning on the subject, but will refer the reader to

the cases above cited, which, being read, will not only give a history of legislation and adjudication leading up to the act of 1930, but evidences a broadening of the power of the representative, subject to the discretion of the chancellor to do what in his judgment he deems best for the preservation of estates in the hands of representative, belonging to persons under disability. In the case mentioned as authority here, there appear two distinct differences; there the property was that of an infant; here it is the property of a person lacking in the proper quality of mind. There the mortgage was made to pay the debt of an ancestor, here the mortgage is to be executed for securing funds to pay the debt of the ward, made at a time when she could and did legally create the debt.

If the purpose of section 2150a has the meaning and effect attributed in the cases cited, there can be little doubt but that the chancellor, upon a proper showing, as is required by said section, and as pointed out in the authorities mentioned, as well as in Kentland Coal & Coke Co. v. Coleman's Guardian, 243 Ky. 184, 47 S. W. (2d) 1069, and Sweeney's Guardian v. Sweeney's Committee, 256 Ky. 117, 75 S. W. (2d) 749, has the power to direct the sale or pledging of land of a person of unsound mind to pay a debt created by the ward at a time when the ward had power to bind herself.

The discussion in the briefs as to whether or not such a suit, as is here presented, is properly maintainable under section 2150a, Ky. Stats. Supp. 1933, or section 639a-1, Civil Code Prac., does not necessarily enter into the merits of the main question. Counsel for appellant insists that the suit is brought under the provisions of the section of the Code, supra. It is contended for appellee that the suit is only maintainable under the section of the statute quoted. The Code section is one authorizing the bringing of an action to obtain a declaration of rights of parties having an actual controversial question for determination. The section of the statute has naught or little to do with the form of action. It goes to substance, rights, powers, and protection rather than procedural form. The action here could have been brought in the ordinary and usual form of suits in equity, or as it was in the simplified form or manner provided by the Code, supra. The section of the statute is a granting of power, with limitations upon

the chancellor acting in matters dealing with property of disabled persons, and when the suit is brought, the chancellor is limited in his authority to its terms and conditions, as properly construed, in carrying out the purposes and intentions evidenced thereby. It may be here that the failure of the pleader to fully set out in the petition the terms and conditions upon which the loan is to be procured, amounts to a fault in pleading. If so, it is highly technical, and since before a decree may be entered authorizing any movement toward executing the mortgage contemplated, the chancellor must be satisfied that the interest of the ward will be fully preserved, the question of terms and conditions may be presented by sufficient proof to warrant the chancellor in his conclusion that what is decreed will redound to the interest of the ward or the ward's estate.

With these views in mind, the court is of the opinion that the judgment should be reversed, with directions to overrule the demurrer, and for further proceedings consistent herewith, the statutes bearing on the subject, and other opinions of this court pointing out the duties, power, and authority of the lower court.

Judgment reversed.