## Proctor v. Proctor et al.

Jan. 19, 1940.

J. B. Hannah, Special Judge.

Lester Hogge and W. C. Hamilton for appellant.
W. E. Proctor, D. B. Caudill and James C. Clay for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellant, C. B. Proctor, and the appellees, W.

E. Proctor and Etta Proctor Caudill (whose husband is D. B. Caudill), are children of C. A. Proctor, who died intestate in Rowan County on October 14, 1935. One other son, J. H. (Herb) Proctor, died prior to C. A. Proctor leaving a widow, Edith Proctor, but no children. No administration was ever granted on the estate of C. A. Proctor. This action was filed by the appellees against the appellant alleging that by inheritance from C. A. Proctor they and the appellant were the owners of several tracts of real estate described in the petition and a sale of this real estate was sought for a division of the proceeds. In effect, a settlement of the estate of C. A. Proctor was sought. It was also alleged that C. A. Proctor in the year 1936 conveyed one of the tracts, known in the record as the 30-acre field, to appellant and Herb Proctor without consideration and that this deed should be treated as an advancement and charged to appellant in the division of the proceeds.

Appellant did not contest the sale of real estate concededly owned by C. A. Proctor at the time of his death but claimed to be the owner of a one-half interest in the 30-acre field under the deed above mentioned; that he had paid a valuable consideration therefor, namely had paid his one-half of the $1,500 consideration agreed to be paid by him and Herb Proctor. He also claimed to be the owner of what is known as the C. A. Proctor homeplace in the town of Morehead by virtue of a deed from C. A. Proctor to him, dated May 6, 1935, conveying what is referred to in the evidence as the homeplace containing 3 acres more or less, but which, it seems to be conceded, contained only about 1 acre. Appellees countered by attacking this deed as a forgery and the notary's certificate of acknowledgment as a fraud. A great mass of testimony was taken and on final submission the chancellor adjudged that the deed to the homeplace was a forgery; that the conveyance by C. A. Proctor to appellant of the one-half interest in the 30-acre field should be treated as an advancement to appellant in the settlement of the estate, the value thereof being fixed at $3,000. On this appeal the appellant contends that the chancellor was in error in adjudging the deed to be a forgery. He also contends that the chancellor was in error in adjudging the conveyance of the one-half interest in the 30-acre field to have been an advance-

ment; that the transaction was a genuine purchase and sale by C. A. Proctor to him and Herb Proctor for $1,500 and that he had paid his one-half of the consideration. He further contends that even if the evidence does not show that he paid his part of the consideration, nevertheless the chancellor should have adjudged only that he be charged with one-half of the purchase money with interest from the date of the sale.

The evidence discloses that prior to 1931 Herb Proctor and his wife had resided with his father and mother in their home but moved away. By arrangement between appellant and appellees, the appellant and his wife moved into the home of C. A. Proctor for the purpose of taking care of him and his wife, both of whom were advanced in years at that time. Mrs. C. A. Proctor was not only old but was in a crippled condition and the old couple undoubtedly required considerable attention. Apparently it was the understanding between the old gentleman and all the children that the homeplace, or at any rate, the part thereof with the improvements on it was to be conveyed to appellant in consideration of his care for the old people as long as they lived. Numerous witnesses testified that the old gentleman told them on various occasions that he intended to leave the homeplace to appellant for living with them and taking care of them. However, it is the theory of appellees that after the death of Herb Proctor the old gentleman wanted the 30-acre field reconveyed to him and had a deed prepared, to be signed by appellant and his wife and the widow of Herb Proctor making the re-conveyance. Herb Proctor's widow, in consideration of a lot worth about $300 conveyed to her by C. A. Proctor, signed this deed conveying to the old gentleman her dower right. They claim, and introduce strong evidence to support their claim, that appellant at first agreed to this re-conveyance but later on refused to sign the deed; that thereafter the old gentleman was fully determined not to convey the homeplace to appellant. They also introduced evidence to show that while the old gentleman at one time intended to convey the homeplace to appellant he had in mind at the same time making deeds to the other children so as to effect an equitable division of his property but that this plan was only partially carried into execution.

To uphold the genuineness of the deed relied on by appellant conveying the homeplace to him, the appellant and his daughter testified that they saw C. A. Proctor sign the deed in appellant's store. A clerk who worked in the store testified that he saw the old gentleman sign some kind of paper on the date the deed purports to have been executed. Another young man testifies that he was present in the store and saw Mr. Proctor sign a paper but he is unable to identify it as the deed in question. The notary public who took the acknowledgment testifies that the old gentleman signed and acknowledged the deed before him on the date it purports to have been executed. It is shown for appellees that this notary public is a man who had been frequently confined in jail for drunkenness. It is also shown that he was convicted of some offense in Federal Court and sentenced to 12 months in jail but that this sentence was suspended. A number of witnesses familiar with the signature of C. A. Proctor testified with more or less positiveness that the signature is not genuine. Included in these witnesses were the cashier and assistant cashier of the bank in which Mr. Proctor kept his account. Two handwriting experts of the city of Louisville testified that the signature is not genuine. F. M. VanAntwerp, one of these handwriting experts, testifies with great positiveness that the signature to the deed is a carbon impression and that it is apparent that a pencil never touched the paper where the signature appears. He states that a pencil moving over the surface of paper under pressure leaves a sheen or polish which can readily be discerned by an expert and that no such sheen or polish is discernible in the lines of this signature. He also states that the questioned signature bears little resemblance to other admittedly genuine signatures made about the same time but that it does resemble signatures of Mr. Proctor made at a considerably earlier date—that the questioned signature is undoubtedly a tracing of one of Mr. Proctor's earlier signatures. Our inspection of the deed leads us to believe that the theory advanced by this witness is the correct one.

After a careful consideration of this testimony, together with all the many other circumstances disclosed by the evidence, we are not prepared to disturb the find-

ing of the chancellor. The most that we can say in favor of appellant's contention is that our minds are left in doubt whether the signature is genuine or forged. In these circumstances, under the oft repeated rulings of this court, it is our duty to follow the finding of the chancellor. While the chancellor was not a resident of the county he does reside in an adjoining county and was no doubt acquainted with the parties and some of the witnesses. He was on the ground when the case was tried and was in better position than are we to pass on this highly controversial issue of fact. He is a capable and experienced trial judge whose decision should not be lightly set aside. Since we are left only with a feeling of doubt as to the correctness of his decision it is plainly our duty to follow it.

The same considerations apply to the chancellor's decision holding that the deed to appellant for the one-half interest in the 30-acre field was without consideration and should be charged as an advancement. The evidence strongly indicates that this deed was only executed by C. A. Proctor in order to place the legal title in appellant and Herb Proctor for the sole purpose of effecting a sale of this land to the Commonwealth for use in connection with the Morehead State Teachers College. It appears that certain persons, who would probably have had great influence in connection with the sale of this land to the Commonwealth, would have blocked any effort to consummate such a transaction as long as the title remained in C. A. Proctor. W. E. Proctor and D. B. Caudill testify that the appellant, before the death of C. A. Proctor, admitted to them that he had no real interest in the property and had never paid any part of the consideration and that the real purpose for making the deed was to effect a sale of the property for school purposes. While appellant claims that this transaction was a genuine purchase and sale and that he had paid his one-half of the purchase money, we have no doubt as to the correctness of the chancellor's finding that the evidence was insufficient to show that he had paid the consideration. Appellant insists that the fact that the $1,400 note executed for the property was in his possession raised a strong presumption of payment which the evidence for appellees did not overcome. Under ordinary circumstances this might be true but as appellant

resided in the home of C. A. Proctor at the time of his death and undoubtedly had access to everything in the house his mere possession of this note does not create a very strong presumption that it was paid. The evidence as to payment is very vague and unsatisfactory. After a careful consideration of all the evidence on this issue we find ourselves in the same situation we were as to the issue concerning the genuineness of the deed, that is, we are only left in doubt as to the correctness of the chancellor's finding. This being true we are not at liberty to disregard it but must follow it.

We might add that we have considered as competent all testimony on both sides. Each side raises strenuous objections to the competency of much of the testimony and a great mass of it was wholly incompetent as an original proposition. We find, however, that although exceptions were filed by both sides to much of this incompetent testimony these exceptions were not ruled on by the trial court. In these circumstances all the testimony must be considered competent. It has been frequently held by this court that unless the record shows that exceptions to depositions were acted on in the lower court they are deemed to be waived. See Prewitt v. Bull, 234 Ky. 18, 27 S. W. (2d) 399 and cases therein cited.

Judgment affirmed.