CHARLES ANDREW JUDEN, ALEXANDER G. JUDEN, SALLY VIRGINIA JUDEN REED, CHARLES G. JUDEN, REBECCA RAMSEY HOUCK FRISSELL, MARY FRISSELL EVANS, and ROBERT EVANS, Respondents, v. GIBONEY HOUCK, CHARLES A. JUDEN, JR., JILL JUDEN, JULIA JUDEN, ALEXANDER G. JUDEN, JR., MICHAEL JUDEN, SALLY MARGARET JUDEN, TERENCE ALEXANDER JUDEN, RONALD S. REED, JR., LOUIS JUDEN REED, ROBERT C. EVANS, JR., WILLIAM GIBONEY EVANS and PATRICK FRISSELL EVANS, Appellants.—231 S. W. 2d 839.

St. Louis Court of Appeals. Opinion filed July 18, 1950.

*Giboney Houck* for appellants.

*Jack O. Knehans* for respondents.

ANDERSON, J.—This is a suit in equity brought by Charles Andrew Juden, Alexander G. Juden, Salley Virginia Juden Reed, Charles G. Juden, Rebecca Ramsey Houck Frissell, life tenants of certain real property, and Mary Frissell Evans, adult contingent remainderman, and Robert C. Evans, her husband, all as plaintiffs, against Giboney Houck, contingent remainderman, and certain minors, contingent remaindermen, viz: Charles A. Juden, Jr., Jill Juden, Julia Juden, Alexander G. Juden, Jr., Michael Juden, Sally Margaret Juden, Terence Alexander Juden, Ronald S. Reed, Jr., Louis Juden Reed, Robert C. Evans, Jr., William Giboney Evans, and Patrick Frissell Evans, as defendants. The object of the suit was to secure a decree directing and authorizing Giboney Houck, the guardian ad litem for the infant defendants, to execute a twenty-five year lease of the premises to F. W. Woolworth Company. The trial court, by its de-

cree, granted the relief prayed. From this decree, Giboney Houck, for himself individually and as guardian ad litem on behalf of the infant defendants, has appealed.

The property in question is located in Lot Number Three (3), Range "C" in the City of Cape Girardeau, Cape Girardeau County, Missouri, and is described in the petition as follows:

"Beginning at a point being the intersection of the Westerly property line on Main Street with the Northerly property line on Independence Street; running thence Northerly along the Westerly property line on Main Street parallel to the Easterly property line on Spanish Street for a distance of forty-four feet two inches (44' 2"); running thence Westerly and parallel to the Northerly property line on Independence Street for a distance of one hundred feet (100'); running thence Northerly parallel to the Westerly property line on Main Street for a distance of eleven feet ten inches (11' 10"); running thence Westerly and parallel to the Northerly property line on Independence Street for a distance of one hundred fourteen feet (114') to the Easterly property line on Spanish Street; running thence Southerly along the Easterly property line on Spanish Street parallel to the Westerly property line on Main Street for a distance of fifty-six feet (56') to the Northerly property line on Independence Street; running thence Easterly along the Northerly property line on Independence Street for a distance of two hundred four- teen feet (214') to the point or place of beginning."

The petition sets out the respective interests of the parties in and to the property in question. From the allegations of the petition and from the testimony it appears that the minor defendants are contingent remaindermen by reason of being the bodily heirs of the life tenants.

The petition further alleged that there were several buildings on the premises, some one-story and some two-story, in a serious state of disrepair; that said buildings were within a few hundred feet of the Mississippi River and in constant danger of being flooded when the river reached flood stage; that within the last five years said river had reached flood heights eight times and flooded the buildings to the extent that the floors of said buildings were covered to a depth ranging from six inches to three and one-half feet; that because of the age of the buildings and the aforesaid conditions, the floors, joists, plastering, walls and wiring of said buildings had become rotten, weak and corroded, and required constant and exhorbitant expense for inspections, maintenance and repair, until the conditions had become such that the various parts of said buildings were impossible of repair; that the condition of the buildings was such that they were subject to being condemned by the city authorities.

It is further alleged that by reason of the aforesaid condition of the buildings the income therefrom is likely to be considerably reduced or completely extinguished; that said real estate is located in one of the most prominent and successful business districts of the city, and if improved by the erection of modern buildings with concrete foundations and floors, with necessary allowances for flood conditions, the property would be greatly enhanced in value, the value and usefulness of the property would be prolonged for the ultimate benefit, profit and best interests of the remaindermen, and a substantial and greatly increased income would be received for the benefit of the life tenants and the ultimate benefit of the remaindermen.

It is further alleged that the largest building of said real estate is leased to F. W. Woolworth Company, which lease will expire in the near future; that said leasee has expressed a desire for larger and more modern quarters with room for expansion and reasonable protection against damage by floods, and has expressed its willingness to enter into a twenty-five year lease at a very substantial rental in excess of the present income from said property if the parties to this suit will construct a modern two-story building on the premises; that plaintiffs stand ready, able and willing, and propose to erect such improvements at an estimated cost of one hundred and forty thousand dollars ($140,000.00)—the total cost and expense thereof to be borne by them; that pursuant to the aforesaid plan plaintiffs propose that defendants join with them in a contract for lease with F. W. Woolworth Company, a long and short form lease; that the contract and leases will be for the best interest of all the remaindermen, as well as the life tenants, and will result in a larger and more substantial increase in the value of the property, and an increase in the income therefrom. The prayer of the petition was that Giboney Houck, guardian ad litem, be authorized to execute said leases, and for such orders as otherwise might appear equitable.

The guardian ad litem filed an answer on behalf of all the minor defendants. By said answers it was averred that plaintiffs' petition did not state a cause of action because it shows upon its face that plaintiffs are life tenants and have no authority over the property except during their lives; that, under the facts stated in the petition, the court has no authority in law or in equity to set aside, limit or amend, the interests of the minor defendants, or to lease or encumber the property or dispose of the same; that under the devise to the plaintiff Rebecca Houck Frissell, she may by her will dispose of the property devised to her, to her own children, her nieces or nephews, or their descendants, and this is a limitation on her right to encumber the property described in plaintiffs' petition.

The allegations of the petition found ample support in the evidence. It appears from that evidence that the proposed lease would be for the benefit of all concerned. Appellant does not contend otherwise.

In fact, the only contention on this appeal is that the decree is erroneous for the reason that a court of equity is without power to authorize a lease binding on the infant defendants beyond their minority.

Although there is a conflict of authority on the subject, the majority of cases hold that a court of equity, unless prohibited from doing so by statute, may, in the exercise of its inherent or statutory power to sell or mortgage an infant's land, properly exercise the lesser power of approving a lease of such land extending beyond the infant's minority, if thereby his interests are materially promoted, and that such leases are valid and binding upon the infant after he reaches full age.

In McCreary et al. v. Billings et al. (Ala.) 58 So. 311, plaintiff sought a decree authorizing a lease for twenty-five years of property in which certain minors had an interest. The trial court denied relief, but was reversed by the Supreme Court. The court said: (l.c. 311, 312)

"It has long been the settled doctrine in this state that it is within the original jurisdiction of courts of equity to decree the sales of lands of infants, not only for their maintenance and education, or to remove encumbrances, or to satisfy charges resting thereon, but for the investment of the proceeds of sale for the general interest and advantage of the infant. (citing cases) The exercise of the jurisdiction is not dependent on the nature and quality of the estate of the infant, whether it is an absolute estate of present possession and enjoyment, or a future estate, a reversion or remainder, though as was said in Goodman v. Winter, 64 Ala. 410, 38 Am. Rep. 13, supra, because of the uncertainty of the value of a future or contingent estate, lest there should be a sacrifice of the interest of the infant, the court would be the more reluctant to decree a sale. The reason underlying the doctrine is that, as the infant labors under disability, is incapable of managing and disposing of property, the court owes to him the duty of protection, and of controlling and administering his property, so as to promote his convenience and interests—a similar reason to that which prevails when the court decrees a sale for his maintenance and education.

\* \* \* \* \* \* \* \* \* \*

"If, therefore, the chancery court could and would decree a sale to go into effect at once then the conditional feature of the present offer, in postponing the final consummation to twenty-five years, in the nature of a lease, with the option of buying at the fixed price, should not be an obstruction, in view of the many advantages to be derived therefrom to the owners, as appears from the averments of the bill. If the chancery court has the power to sell, it would have the power to lease; \* \* \* "

Again, in Ricardi et al. v. Gaboury et al., 115 Tenn. 484, 89 S.W. 98, it was held that the court had power to authorize a lease of infant's real estate for ninety-nine years. The court said: (l.c. 99)

"As to the power of the court of chancery to authorize this lease we entertain no doubt. Section 5072 of Shannon's Code provides that for and on behalf of persons laboring under the disability of coverture and infancy a court of chancery may consent to and decree a sale of the property, real or personal, of such persons. While we have this code provision, yet it is well settled in this state that the chancery court has of itself jurisdiction to sell the real estate of a minor, where it is manifestly for his interest that a sale be made. This jurisdiction is independent of the statute and inheres in the texture and character of the court. (citing cases).

\* \* \* \* \* \* \* \* \*

"The theory upon which the court exercises its jurisdiction in all such cases is that the infant's real estate shall be so controlled by its decrees as to secure his best interest. \* \* \* We think it equally within the power of the chancery court to authorize the making of a lease of the property of a minor as will be most beneficial to him."

In Coxe v. Charles Stores Co., 215 N.C. 380, 1 S.E.2d 848, 121 A.L.R. 959, plaintiffs were eighteen years of age and owners of a lot and store building in the City of Asheville. These premises were leased to Charles Stores Company, the lease expiring October 31, 1941. The parties desired to make extensive improvements and repairs to the property and to substitute a new rental contract to run for ten years from January 1, 1939, the term extending several years beyond the minority of the plaintiffs. The court granted the prayer of the petition and approved the lease after finding that it was clearly for the best interests of the infant petitioners. The defendant appealed, questioning the authority of the court to approve the lease for a longer period than the current year in which the infant petitioners should become of age, in view of the statute which limited the authority of the guardian in making leases of lands belonging to their infant wards "for a term not exceeding the end of the current year in which the infant shall become of age, or die in nonage." The court held that the statute was a limitation upon the discretionary power of guardians, and not upon the authority of a court of equity having supervision and oversight over their conduct, and that since, in the exercise of their equity jurisdiction, courts have ample authority to order the sale or mortgage of the real estate of infants upon application of their guardians showing that the interests of the wards would be materially promoted thereby, it followed as a necessary corollary that the disposition of a lesser estate upon the same grounds might be equally sanctioned by the courts. The court said: (l.c. 849)

658

"The Superior Courts of this State, by statute, C.S. Supp. 1924, sec. 2180, and in the exercise of their chancery jurisdiction, have ample authority to order the sale or mortgage of the real estate of infants, upon application of their guardians showing that the interests of the wards would be materially promoted thereby (citing cases), and we think it must be held upon authority, as well as upon reason, that the power to order sales and mortgages includes the lesser power to approve leases where it clearly appears that such would be to the best interests of the infant wards. Annotation, L.R.A., 1916F, 499.

\* \* \* \* \* \*

"Granting the power of a court of equity to dispose of the fee in a minor's real estate when it appears that such is manifestly to his interest, it would seem to follow as a necessary corollary that the disposition of a lesser estate upon the same ground might equally be sanctioned by the court. Ricardi v. Gaboury, 115 Tenn. 484, 89 S.W. 98. The general jurisdiction of the court over the property of infants, aided by the statutes on the subject, would appear to be sufficient to confer the authority. Springs v. Scott, 132 N.C. 548, 44 S.W. 116. Indeed, the court stands in loco parentis to infants and it may change their estates from realty into personalty, and from personalty into realty, whenever it deems such a proceeding most beneficial to the infant. (citing cases).

"Speaking generally to the subject in Commercial Nat. Bank v. Alexander, 118 N.C. 667, 125 S.E. 385, 387, Adams, J., delivering the opinion of the Court, said: 'It is unquestionable that courts of equity have general jurisdiction over the property of infants, and that infancy alone is sufficient to sustain the right of supervision. The jurisdiction in all cases is complete, and may be exercised in order to afford relief wherever it may be necessary to preserve and protect the estates and interests of those who are under age. \* \* \* 3 Story's Eq. Jurisprudence (14th Ed.) Sec. 1742 et seq.; 10 R.C.L. 340, sec. 89; 31 C.J. 1035, sec. 97; Morris v. Gentry, 89 N.C. 248; Tate v. Mott, 96 N.C. 19, 2 S.E. 176' "

See also, Gillelspie v. Jackson et al. (Tenn.), 281 S. W. 929, l.c. 932. Annotation, 121 A.L.R. 965; 43 C.J.S., Infants, sec. 69, p. 159; 31 C.J., Infants, sec. 146, p. 1058.

While we have not been able to find any case in Missouri squarely in point, we are convinced that the doctrine announced in the foregoing cases is correct and should be applied in the case at bar. Consequently, we hold that the trial court had ample power to grant the relief it did. We also hold the decree binding on any remaindermen who may hereafter be born, on the theory of "virtual representation." White v. Campbell, 316 Mo. 949, 292 S.W. 51; Audsley v. Hale et al., 303 Mo. 451, 261 S.W. 117; McConnell v. Deal, 296 Mo. 275, 246 S.W.

594; Edwards v. Harrison, Mo. Sup., 236 S.W. 328; Jackson v. Miller, 288 Mo. 232, 232 S.W. 104; Buckner v. Buckner, Mo. Sup., 210 S.W. 887; Gills Treatise on Real Property Law, pages 1258-1264.

The judgment appealed from is affirmed.

*Hughes* and *McCullen, JJ.,* concur.