## Mark v. Mark et al.

October 3, 1950.

John J. Winn, Judge.

Tom P. Senff for appellant.

F. C. Bryan for appellee.

JUDGE KNIGHT—Affirming in part, reversing in part.

This is a suit by appellee as guardian of his infant ward, appellant herein, seeking authority by a judgment of the court to mortgage the one eighth interest of the infant in a farm, for the purposes herein-

after set forth, pursuant to the provisions of Sec. 489 (8) of the Civil Code of Practice. The facts are these:

B. F. Mark died a resident of Montgomery County on January 11, 1949 at the age of 89 years. At the time of his death he owned three tracts of land located on U. S. Highway No. 460 in a good farming section of Montgomery County, tract No. 1 consisting of 56¼ acres, tract No. 2 consisting of 71 acres, in both of which he owned the fee simple title, and tract No. 3 consisting of 91.8 acres in which he owned only a life estate with remainder to his heirs at law. His only child, a son, J. F. Mark, had predeceased him, having died on July 12, 1947. This son had eight children and when he died they succeeded him in prospective heirship and upon the death of B. F. Mark they became vested with fee simple title to the three contiguous tracts described in the petition which together constitute a farm of 219.05 acres which is and for many years has been operated as one farm. All the eight children, grandchildren of B. F. Mark, are sui juris except appellant Marjorie Mark who at the time this suit was filed, more than a year ago, was eighteen years of age.

At the time of his death B. F. Mark had personal property which was appraised at $5,070.40 and which was turned over to his administrator, Richard Mark. At the time of his death B. F. Mark owed a total indebtedness of $13,975.11, of which $6,200.66 was represented by a mortgage to the Federal Land Bank of Louisville, covering tracts No. 1 and No. 2 in which he had the fee simple title. Tract No. 3, in which he had only a life estate, was not covered by the mortgage. Deducting the value of his personal estate from his total indebtedness there will remain an unpaid indebtedness of $8,904.71. The farm of 219.05 acres has a present market value of approximately $40,000 and a sale of one or both tracts Nos. 1 and 2 would be necessary to pay his indebtedness. However, it is amply shown by the proof and it is obvious from the plat filed in the record that a sale of either of these tracts would materially impair the value of the farm. This farm has a narrow frontage on highway 460 on which only tract No. 2 abuts. On this tract No. 2 is located the only dwelling house on the farm and on it is located the combination tobacco and stock barn and other outbuildings. On tract No. 1, which is on the rear of the

farm some distance from the highway, is located a six bent tobacco barn. Connecting the two tracts is tract No. 3, a long narrow tract on which there are no improvements. The short frontage on the highway is the only hilly part of the farm and there is only one valley on this frontage that can be used advantageously as an entrance to the farm and to reach tracts Nos. 3 and 1 and, if these tracts were sold separately, it would necessitate long rights-of-way over tracts 2 and 3. Since tract No. 3 is without improvements it could not be farmed to advantage and its value would be impaired by its severance from the other tracts.

Recognizing these facts, which are fully set out in the pleadings and amply sustained by the evidence, it is the desire of the adult heirs, all of whom joined in this suit, and the guardian of the infant heir that none of the property be sold to pay off the debt of the ancestor but that instead it be mortgaged for sufficient amount to pay off the indebtedness and to make certain improvements and repairs necessary to carry on the farming operations and to continue it as a home for the infant during her minority and until she completes her education in college which she is desirous of doing. The farm is now being operated by two of the adult heirs, one of whom is married, as tenants and the infant Marjorie lives on the farm with them, thus being provided with a comfortable and congenial home. It is shown by the evidence that due to his advanced age the place was poorly farmed by the owner B. F. Mark and also by the son J. F. Mark during the last few years of his operation of it with the result that it is now in need of the following repairs: painting the large colonial residence at a cost of about $500; re-roofing the stock barn and replacing it on its foundation, from which it is presently detached, at a cost of about $650; building new and repairing old fencing at a cost of about $1500 so that the farm can be cultivated and livestock kept thereon. To do this and to pay off the indebtedness of B. F. Mark, including the cost of administration and the cost of the stock in the Federal Land Bank amounting to $650 necessary to secure the loan, will require approximately $13,000, and the adult heirs and the guardian of the infant have a commitment through its nearest Farm Loan Association for a loan of that amount secured by a mortgage on the

entire farm to the Federal Land Bank which will make no loan unless the mortgage covers the entire farm of 219.05 acres. If anything remains out of this loan after paying the indebtedness and the necessary repairs, it is the desire of the parties that the balance be used to purchase livestock of which there is none at present on the farm. It is also shown by the proof that if these things are done the farm can be profitably operated so that under present conditions the share of the infant from its operation will produce a revenue as her share of something like $400 to $500 per year, whereas if the farm is sold in its present condition, or at a forced sale the income from her share otherwise invested would be approximately $100 per year and she would be without a home while completing her education or until she is married.

Taking into consideration the facts herein set out and other facts shown in the record, the chancellor, who knows all the parties and is familiar with the land involved, after a careful consideration of the entire case, as evidenced by his comprehensive opinion filed in the record, overruled the general and special demurrers filed by the guardian ad litem of the infant and adjudged that it would be to the best interest of the infant that her guardian join in the proposed mortgage to cover her interest in the farm. Her guardian ad litem filed this appeal to obtain a final adjudication of this court.

## The Law of the Case

The question presented to us is this: Did the chancellor exceed his statutory authority in entering a judgment authorizing her guardian to mortgage the interest of the infant in the land involved for the purpose of paying the indebtedness of the ancestor, including costs of administration of his estate, for making certain essential repairs to the property, for certain costs incident to the obtention of the mortgage and for the purchase of livestock for the operation of the farm?

Prior to the enactment of 1930 of Section 2150a, Kentucky Statutes, there was no provision for the private sale of an infant's land by his guardian with the approval of a court of equity, and even a court of

equity had no power to authorize a mortgage of an infant's real estate. Posey v. Dugan, 59 S.W. 862, 22 Ky. Law Rep. 1104. By the enactment of Section 2150a the Legislature authorized a private sale of the infant's real estate by the guardian with the approval of the judge of the circuit court of the county in which the land was located. The purpose of this act was to provide a simpler and less expensive method of selling an infant's real estate than those provided by Sections 489-491 of the Civil Code of Practice as they then existed. While this act provided only for a sale of the property and no mention was made of the power to mortgage it, the act embraced in the section referred to was soon construed by this court to include the power of the guardian to mortgage the real estate for certain purposes with the approval of the chancellor. This right to mortgage the infant's real estate was first upheld by this court in B'Hymer's Guardian v. B'Hymer, 257 Ky. 10, 77 S.W.2d 411. In that case the proposed mortgage was only for an amount sufficient to pay the debts of the ancestor and in approving it this court said that an infant's real estate cannot be mortgaged by the guardian except for the debts of the ancestor, even with the approval of the court.

Shortly after the decision of this court in the B'Hymer case supra, the question again came before this court in the case of Wadlington's Guardian v. Wadlington's Guardian, 257 Ky. 15, 77 S.W.2d 357. In that case it was shown that B. F. Stone, administrator of the estate of the deceased land owner, George Wadlington, had expended from his personal funds approximately $1900 for the maintenance, support and education of the four infant children of the deceased for whom their mother was guardian. In that case there was a mortgage on the farm with a balance due of approximately $2000, and authority was sought to permit the guardian to mortgage the property, worth approximately $6500, for $3900 for the purpose of paying off the old mortgage of $2000 and of paying the debt due the administrator personally for the sum expended by him for the benefit of the children. This court held in that case that the lower court was without authority to include in the mortgage the $1900 necessary to repay the debt due Mr. Stone for money he had expended for the maintenance and education of the infant children.

The only remaining case construing Section 2150a insofar as it relates to the authority to mortgage is that of Hay's Committee v. Hay's Guardian, 260 Ky. 586, 86 S.W.2d 313. In that case this court held that the committee of an insane woman could mortgage her real estate to pay off a mortgage which she placed on the property while she was sane and under no disability. No new indebtedness was involved in that case but it was simply a transfer of an existing indebtedness from one who was pressing for its payment to a new mortgagee, the Federal Land Bank in that case, which was willing to make the loan. This case therefore represents no departure from the principles laid down in the B'Hymer and Wadlington cases supra.

In 1942 the Legislature repealed Section 2150a. The only reason for its repeal appears to have been to take it out of the Statutes, where it never belonged, being purely procedural, and to place it in the Civil Code of Practice, where it properly belonged, along with other sections of the Civil Code of Practice relating to the sale of real estate of persons under disability. The Legislature in 1942, in revamping Section 489 of the Civil Code of Practice, incorporated into subsection 8 of that section substantially the provisions which had been embraced in 2150a and repealed the latter, and all authority for the private sale or the mortgage of real estate of persons under disability is now found in Section 489 (8) of the Civil Code of Practice. The wording of this subsection of the Civil Code of Practice differs only in detail from the wording of 2150a which it replaced and the grant of authority contained in the new Civil Code of Practice subsection neither increases nor diminishes that contained in the old Statute. Since the passage of the act of 1942 this court has not had before it any case involving the rights, duties or limitations of a guardian or committee of a person under disability with reference to mortgaging the real estate of his ward. In that respect therefore there has been no construction of Sec. 489 (8) and we have only the construction of its predecessor, 2150a, Ky. St., by the cases heretofore referred to, to guide us.

In his opinion the chancellor conceded that he found no authority in the cases above discussed for approving the mortgage in this case except to the ex-

tent that the mortgage was to pay off the debts of the ancestor. However, he based his authority for including in the mortgage a sum for necessary repairs on the case of Ex parte Roush et al., 281 Ky. 733, 137 S.W.2d 352. That was not a case construing 2150a, Ky. St., or its successor, Sec. 489 (8) of the Civil Code of Practice, but involved a construction of Sec. 2146, Ky. St., now KRS 392.130. That section provides that a wife, not of full age, may be permitted, with the approval of the circuit court, to unite with her adult husband in the conveyance of his real estate so as to release her prospective right of dower. In that case approval of the chancellor was sought for the execution of a mortgage on the property. This mortgage not only covered the balance due on the old mortgage but an additional sum for needed repairs on the property therefore making the case in some respects analogous to the case at bar. In the Roush case the opinion cited the B'Hymer and Wadlington cases supra and drew support from them by analogy as supporting its conclusion that if section 2150a, now 489 (8) of the Civil Code of Practice, had been construed to cover a mortgage as well as a sale, as it had been in the B'Hymer and Wadlington cases, Ky. St. Sec. 2146 could be so construed in authorizing a mortgage instead of a sale. However, in the Roush case this court went a step further and permitted the mortgage to include cost of repairs in addition to the pre-existing indebtedness. As this court said in the Roush case [281 Ky. 733, 137 S.W.2d 354]:

"We go even a step further than the B'Hymer case in concluding that such permission may be given not only to secure funds to retire lien indebtedness but also to make such improvements as may be necessary in order to occupy and cultivate the land to better advantage and profit. Such improvements may be as necessary for the preservation of the land and to enable the owner to pay for it as the re-financing of lien indebtedness to prevent foreclosure. The statute throws every safeguard around an infant husband or wife or an incompetent by requiring that any alienation of their estate must be with the approval of the circuit court."

While the Roush case is distinguishable from the B'Hymer, the Wadlington, and the case at bar in that

it merely permitted the infant wife to burden her inchoate right of dower with a mortgage, and in the other cases it was the actual fee simple interest of the infant that was being mortgaged, we think the situations are sufficiently analogous to justify a further step in the instant case, as it was in the Roush case, and permit the proposed mortgage in the present case to cover not only the debt of the ancestor but essential repairs shown by the proof to be necessary for preservation and operation of the farm. This would include not only the balance due on the pre-existing mortgage but the essential costs of administration incident to settling the ancestor's estate, which in this case is shown to be approximately $550. It would include the expenses incident to obtaining the Federal Land Bank loan, including stock in the Land Bank amounting to 5% of the loan or $650 which is necessary to obtain the loan. The purchase of the stock does not really represent an indebtedness of loss to the infant since under the terms of the mortgage the full amount of the stock is refunded to the borrowers upon repayment of the loan and the infant will receive her share thereof. The stock is an asset and pays dividends if the local association through which the loan is obtained has a profitable operation.

The repairs and improvements to be covered by the proposed mortgage are amply shown by the proof to be necessary to the successful operation of the farm and in this case appear to have been made necessary by the inefficient operation of the farm during the past several years because of the age of its owner and the ineptitude of his son J. F. Mark, shown by the proof to have been a ''poor farmer,'' a condition which the proof indicates will be improved under the present younger management.

Although we have gone a step further than in any previous case involving a construction of this section of the code or its statutory predecessor by approving this mortgage to cover the debts of the ancestor and essential repairs, we do not feel justified in taking the additional step, which the chancellor approved, of allowing the mortgage to cover the purchase of livestock. We think this would in effect permit the mortgaging of the infant's property for obtaining operating capital.

We think a distinction can well be drawn between a mortgage which is used to pay off the debts of an ancestor and to rehabilitate property which he has allowed to deteriorate, and a mortgage which furnishes working capital for operations which are somewhat in the realm of speculation. We, therefore, think the judgment of the lower court was in error in including in the amount of the mortgage any sum for the purchase of livestock for the farm, desirable as that may be in this particular case. The amount contemplated to be used for that purpose is small here and no doubt it can be financed in other ways by the adult owners of the property.

It remains to consider only one other point raised by the guardian-ad-litem on this appeal. That is that since the decedent had only a life estate in tract No. 3 involved in this action and that tract was not impressed with the debt of the ancestor, therefore the court was without authority to include that tract in the proposed mortgage which is for the purpose of paying off this debt and making essential repairs. If this tract No. 3 were an entirely separate and segregated tract, his contention would perhaps be well founded. However, tract No. 3 is an integral part of the farm of 219.05 acres and its severance from the entire farm, which has been operated for many years as a unit farm, would, as shown by the plat and other evidence in the record, probably result in great loss to its owners and would be highly impractical. It is further shown that the proposed mortgage could not be effected except on the farm as a whole. Under these circumstances we think the inclusion of tract No. 3 in the judgment was proper.

To the extent that the judgment permits any of the proceeds of the proposed mortgage to cover purchase of livestock for restocking the farm lands here involved, it is reversed. In all other respects it is affirmed.