**PIKEVILLE OIL & TIRE COMPANY, Appellant,**

v.

**Agneta DEAVORS, Guardian for David William Deavors, et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 6, 1959.

F. M. Burke, Pikeville, for appellant.

Hinton & May, James P. Ramsey, Pikeville, for appellees.

STANLEY, Commissioner.

We have the question of the authority of a circuit court by virtue of KRS 389.-010(13) to approve the execution of an instrument denominated "Deed of Conveyance," but which is, in substance, a lease for thirty years of real property by a guardian for and on behalf of infants who have a future contingent interest. All holders of present interests and right of possession join in the action.

On May 5, 1950, a deed for the lot involved here and other property was drafted by a preacher who was also a notary public. Manifestly, he was blissfully ignorant of how a deed should be drawn and of the complications and hazards that result from making grantees of children born and unborn. The deed exemplifies the truth of the adage, "A little learning is a dangerous thing." The circuit court truly observed that the deed "is so inartfully drawn and is so vague, indefinite and contradictory that it is difficult, if not impossible, to determine what the rights of the parties named therein, particularly the infant children of Earl Deavors and Agneta Deavors, born and unborn, might be." No construction of the deed has been sought. The court noted that all of the adult grantees and the guardian of the infants (except possible unborn children) are parties to this action, and that they had agreed among themselves what the rights of the infant children may be, which construction is more favorable to the infants than any construction which the court might make. Therefore, the court accepted that construction since the parties will be bound by it. In short, as thus construed, the deed created four successive life estates, namely, (1) W. M. Thomas Deavors, (2) his wife, Mary, (3) his son, Earl, and (4) his wife, Agneta, and a contingent remainder, upon the death of the last surviving life tenant, to two small children of Earl and Agneta Deavors, by name, and any others that might be born to them. They have had another child since the date

of the deed. We agree with the conclusions of the circuit court.

The property is a lot fronting 107 feet on Highway No. 23, about a quarter of a mile south of the city limits of Pikeville. Its surface is eight feet below the level of the highway. The property has always been unproductive. All four of the life tenants and Agneta Deavors as the guardian of her three children propose to execute the deed of conveyance to Pikeville Oil and Tire Company. By it they "grant and convey unto the grantee the sole and exclusive right to use and occupy" the described lot for a fixed term of ten years with an option of two successive renewals of ten years each, i. e., a maximum term of thirty years. The consideration is that the company will erect a gasoline filling station on the lot at a cost of $25,000, which will become the property of the grantors or the contingent remaindermen upon termination of the right of occupancy. The company will pay $100 a month for the first ten years and $150 a month thereafter as long as the grant remains in effect. Thus, it may be said that there is a total consideration of $73,000. The transaction is shown to be very favorable to the Deavors family. The father and son (Thomas and Earl) have no capital and neither earns more than $150 a month. Unless this transaction, or some similar one, may be approved by the court on behalf of the infant contingent remaindermen, it is likely that the property will remain of no use to anybody. The guardian of the three infants, joined by the life tenants, petitioned the court for its approval, and the court approved the transaction.

This proceeding is that defined in KRS 389.010, subsections (13) to (17). Subsection (13) provides, in pertinent part, "Without previous judicial proceeding or judgment the guardian of an infant * * * may sell privately or at public auction and convey any interest in real estate owned by a ward for such reasons and purposes and upon such terms and conditions as he shall deem best for the interest of said ward. Provided, however, that no such sale shall be consummated until same shall have been approved by the judge of the circuit court in the county where the land or a portion thereof is situated in a suit in equity filed by the guardian * * * against said infant or person of unsound mind. The petition shall set forth the reason and purposes of the sale and the terms thereof." Subsection (14) prescribes the procedure. Subsection (15) provides, "If the chancellor shall deem the sale advisable and the terms and price satisfactory, he shall enter an order approving the same; [provisions for the execution of a bond follow]."

These provisions for a private sale of real estate of persons under disability with the approval of a chancellor came into our Kentucky law in 1930. Sec. 2150a, Kentucky Statutes. It is a departure from strict statutes and procedure that had come down through the years which required a sale by the court subject to exacting limitations. In 1942 (amended in 1944) the Legislature unified and simplified the procedure. The act was formerly a part of Civil Code, § 489, but is now a part of KRS 389.010, above described. The sanction by the court of a private sale under this statute is regarded as a judicial sale. Landers v. Scroggy, 294 Ky. 848, 172 S.W.2d 557. Were this an unlimited sale and alienation of a fee simple title, it would be within the express terms of the statute. The authority extends to the sale of a vested or a contingent interest of infants. Gunn v. Sutherland, 311 Ky. 578, 224 S.W.2d 929; Gill v. Phelps, 313 Ky. 217, 230 S.W.2d 892.

We have also held that notwithstanding the literal terms of the statute relate to a "sale," the authority includes the power to exchange real estate since such a transaction partakes of the nature of a sale, Sweeney's Guardian v. Sweeney's Committee, 256 Ky. 117, 75 S.W.2d 749, and to mortgage an infant's land in order to raise money to pay his ancestors' debts or taxes, which are liens upon the land,

B'Hymer's Guardian ad Litem v. B'Hymer, 257 Ky. 10, 77 S.W.2d 411; Clay v. Clay, Ky., 307 S.W.2d 777, or to pay such debts and to repair the property. Mark v. Mark, 313 Ky. 536, 233 S.W.2d 100.

■ In the present case the title is such that the respective infants have only some possible future contingent interest. The right of possession and to collect the rents is held by four successive life tenants. All of these life estates must terminate before any child will receive any interest at all. It is not likely to occur within the period of the conveyance-lease. Whenever the remaindermen get title, under this contract they will get the land back with the improvements thereon. Under the terms of the proposed instrument the parents will receive one-half the monthly consideration or rentals, so the children will benefit directly or indirectly therefrom. As described, the instrument is a sale and a grant for a limited period rather than being the conveyance of the entire title. It has all the attributes of a lease. But a lease is not only an executory contract, it is also a present conveyance or grant of a slice or an interest less than a fee, with conditions attached. 51 C.J.S. Landlord and Tenant § 202; 32 Am.Jur., Landlord and Tenant, §§ 2, 3. In Moore v. Brandenburg, 234 Ky. 400, 28 S.W.2d 477, 478, we held, "A lease is a conveyance of an estate in realty. It divests the owner for a given time of a certain estate in the land, leaving in the owner the right of reversion at the expiration of the grant. Mullins v. Nordlow, 170 Ky. 169, 185 S.W. 825; Mattingly's Ex'r v. Brents, 155 Ky. 570, 159 S.W. 1157; Patchen Wilkes Stock Farm v. Walton, 166 Ky. 705, 179 S.W. 823."

■■ All parties recognize that a lease by a life tenant cannot ordinarily extend beyond his tenancy. Avey v. Hogancamp, 172 Ky. 675, 189 S.W.2d 917. We are concerned only with the conveyance-lease as it affects the interests of contingent infant remaindermen before the expiration of thirty years or of those whose interests might possibly become vested during an unexpired period. The action of the court, in approving the transaction, will be binding upon afterborn remaindermen under the doctrine of virtual representation. Carroll v. First National Bank & Trust Co. of Lexington, 312 Ky. 380, 227 S.W.2d 410.

In Juden v. Houck, 241 Mo.App. 651, 231 S.W.2d 839, the court reviewed a number of cognate cases in several other jurisdictions and affirmed a decree approving and authorizing a guardian ad litem for a number of infants having contingent remainders to join in a twenty-five year lease of premises. The court regarded the authority to be within its inherent or statutory power to sell or mortgage land of an infant, saying it had the lesser power of approving such a lease extending beyond the infant's minority because his interests were materially promoted. The court likewise held on the theory of virtual representation that the decree was binding on any remaindermen who might thereafter be born.

■ It is held in this jurisdiction that the power of the courts to sell an infant's real estate is statutory and not inherent. We are of opinion that the authority contained in KRS 389.010 to sell real estate or any interest therein belonging to an infant and to approve a private sale thereof includes the lesser power to convey or lease the same for a term under an instrument like that presented in this case.

In reaching this decision we have not overlooked the statute which limits the authority of a guardian to lease his ward's real estate to a period not exceeding seven years or until his ward reaches his majority. KRS 387.140. This is a limitation upon the guardian's discretionary power and not upon the authority of a court of chancery having oversight and supervision of his conduct. Prior to the Act of 1942 even the power of a court of equity to sell real estate of persons under disability was limited to a sale for certain purposes. But the Act of 1942 (as amended in 1944), now KRS

389.010, permits the court to order a sale or to approve a sale of real estate "for any purpose deemed by the chancellor to be necessary or proper or beneficial to such person under disability." This discretion may be exercised by the court directly or by approving the act of the guardian under that statute. As stated above, we think this power to sell absolutely embraces the power in the court's discretion to sell or lease the property of an infant or incompetent for a definite period extending beyond his disability. Coxe v. Charles Stores Co., 215 N.C. 380, 1 S.E.2d 848, 121 A.L.R. 959, and cases summarized in Annotations, 121 A.L.R. 962.

The judgment is therefore affirmed.