## LEANDER F. HAYES et al., Appellants, v. MATILDA SCHALL et al.

**Division One, June 14, 1910.**

1. **LIMITATIONS: Mortgagee: Out of Possession.** While the Statute of Limitations does not begin to run against a mortgagee's right to foreclose when he is in possession, and holding possession for the purpose of collecting his debt, yet that rule has no application to a mortgagee who is not in possession, or who having taken possession abandons it.

2. ———: ———: ———: **Presumption: Indorser.** Where both mortgagor and mortgagee are dead, it will be presumed that it was pursuant to the mortgagee's right as such that he went into possession, that is, for the purpose of collecting the mortgage debt; but no such presumption can be indulged where the mortgagee, after having taken possession, abandoned it—

and especially where the mortgage was not given to secure a debt due the mortgagee, but to indemnify him against a contingent liability for his indorsement, and there is no evidence that he was ever compelled to pay the debt or had ever acquired the right to foreclose the mortgage.

3. ——: ——: ——: **Abandoned: Subsequent Possession: Married Women.** Where the mortgagee took possession and abandoned it in five years, and neither he nor those who claim under him again took possession until after the mortgagor's only heirs, who were female grandchildren, were married, a continuous possession by them since, though for more than ten years, does not bar the right of such heirs to the property.

4. **MORTGAGE: Payment by Heirs.** As against those who claim under the mortgagee, who for five years was in possession and then abandoned the property, the heirs of the mortgagor, brought into court as defendants in a suit to quiet title, are under no obligation to pay the outlawed mortgage as the price of a judgment in their favor.

5. **LACHES.** Defendants in a suit to quiet title, who ask for no equitable relief, but stand strictly on their legal title, are not barred by laches.

5. **LEGAL MATTERS IN EQUITY.** When a purely legal title is drawn into an equity case, it is decided according to the rules of law. In such case equity follows the law.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

AFFIRMED.

*Spencer & Landis* for appellants.

(1) After condition is broken and possession is taken by a mortgagee, the mortgagor cannot maintain ejectment against the mortgagee or his assigns, unless the mortgage debt is first paid, so as to cancel the mortgage. Pease v. Iron Co., 49 Mo. 128; Johnson v. Houston, 47 Mo. 227. Nor can he obtain relief in a court of equity. Kline v. Vogel, 90 Mo. 239. (2) A court of equity may refuse to grant relief against laches short of the statutory bar, when it would be inequitable. Kline v. Vogel, 90 Mo. 247; Kroening v.

Goehri, 112 Mo. 648. And this rule applies to married women. Real Est. Co. v. Lindell, 142 Mo. 61. (3) An heir's interest in the equity of redemption is subject to the debts of the ancestor, and before there can be a recovery the heir must pay the debt. Ailey v. Burnett, 134 Mo. 316; Kline v. Vogel, 90 Mo. 236. (4) The fact that a mortgagee or his assigns are in possession of the property is prima-facie evidence that the indebtedness has not been paid. 20 Am. and Eng. Ency. Law, 1005; Den v. Wright, 7 N. J. L. 178; Olmstead v. Elder, 2 Sanf. (N. Y.) 325. A mortgagee in possession may stay till the debt is fully paid. 13 Am. and Eng. Ency. Law, 798; Fountain v. Bookstaver, 141 Ill. 461. (5) The right to redeem expires with the right to foreclose a mortgage. Long v. Long, 111 Mo. 16; Jones on Mortgages (5 Ed.), sec. 1146. And this rule applies to married women. Jones on Mortgages (5 Ed.), sec. 1150. (6) To entitle a mortgagor or his heirs to the benefit of a disability it must be one that existed at the time the right to redeem first accrued, and the right to redeem first accrued at the time the mortgagee took possession under the mortgage after condition broken, which was about 1873. The marital disabilities of defendants did not exist at that time. Jones on Mortgages, secs. 1151-2; Hall v. Hooper, 47 Neb. 111; Hubbell v. Sibley, 50 N. Y. 468; Bennett v. Comant, 64 Mass. 163. (7) This proceeding to quiet title, though statutory, is of an equitable nature, intending to supplement the old equitable remedy of removing a cloud from the title. Ball v. Woolfolk, 175 Mo. 285; Garrison v. Frazier, 165 Mo. 65; Huff v. Land Co., 157 Mo. 65; Stone v. Perkins, 117 S. W. 720. A mortgagee in possession is entitled to a decree quieting title. Frizzle v. Dearth, 28 Vt. 787. (8) A suit to quiet title may be in the nature of an equitable action. Lee v. Conran, 213 Mo. 411; Hudson v. Wright, 204 Mo. 423.

*H. K. White* for respondents.

(1) The elements of adverse possession are well settled in this State, and the possession by Mentzel under his mortgage lacked several of the elements of adverse possession. (a) It was not shown to be hostile, but the finding of the court is that it was consistent with the mortgagor's title and interest. 1 Am. and Eng. Ency. Law (3 Ed.), 795; Swope v. Ward, 185 Mo. 324; Hunnewell v. Burchett, 152 Mo. 614; Cockrell v. Stafford, 102 Mo. 69; Munroe v. Barton, 49 Atl. 1069; Horst v. Boyd, 3 San. Ch. (N. Y.) 554; Averett v. Sanford, 36 Conn. 345. (b) The finding of the court was that the possession which Mentzel took was presumably with the consent of Fetzner, the mortgagor. There was no evidence or finding that Mentzel's possession ever changed from a possession consistent with that of Fetzner's title to a hostile possession, and the intention to change a friendly or subordinate possession must be made known distinctly to the true owner. Tyler on Ejectment, p. 887; Hunnewell v. Adams, 153 Mo. 440; Budd v. Collins, 69 Mo. 129; Hamilton v. Boggess, 63 Mo. 249; Gordon v. Eans, 97 Mo. 603; Quinn v. Quinn, 27 Wis. 230. (c) The possession was not continuous for the requisite length of time, even if the original possession taken had been adverse. Bollinger v. Chouteau, 20 Mo. 89; Lumber Company v. Rogers, 145 Mo. 445; Harrison v. Chacelin, 35 Mo. 77; Lynn v. Williams, 68 Mo. 369; Brown v. Hartford, 173 Mo. 191; Goltermann v. Schiermeyer, 125 Mo. 302; Humphrey v. Hurd, 29 Mich. 44; St. Louis v. Priest, 103 Mo. 652. (2) The entry made by appellants, in 1889, was made after the respondents became married women, and as no suit was brought to enforce the mortgage it became outlawed in 1892. R. S. 1899, secs. 4276-7; Lindell v. Lindell, 142 Mo. 81; Mann v. Balfour, 187 Mo. 309.

VALLIANT, J.—This is a suit to quiet title, under section 650, Revised Statutes 1899. The land called for in the petition is the south half of lots 21, 22, 23 and 24, block 4, in St. Joseph Eastern Extension Addition.

Benjamin Fetzner is the common source of title. March 1, 1872, Fetzner executed a mortgage whereby he conveyed the lots in question to Louis Mentzel to secure him against his liability as indorser on two notes, one for $2000 due 90 days after March 1, 1872, the other for $600 due 90 days after February 20, 1872, both bearing interest after maturity at ten per cent. Plaintiffs claim that at or about the maturity of the notes, Mentzel went into possession of the property under some agreement with Fetzner, the nature of which cannot now be known because both men are dead, and that Mentzel and those claiming under him have been in adverse possession ever since and have made valuable improvements thereon. Plaintiffs by mesne conveyances hold whatever title Mentzel and his successors acquired in that way. So far as the record shows there has been no foreclosure of the mortgage and no redemption; the record shows nothing on that subject.

The defendants, Matilda Schall and Josephine Young, are the heirs at law of Benjamin Fetzner, deceased, who was their grandfather, and each claims title of one-third by descent.

Plaintiffs' theory is that a mortgagee has a right to possession after condition broken, and if, acting on that right, he takes possession, time never runs against his right to hold possession as against the mortgagor who can recover possession only on payment of the mortgage; that when time bars the right to foreclose, the right to redeem is also barred and the mortgagee's title becomes absolute. Plaintiffs also contend that the possession of Mentzel began in 1874 and continued in him during the lifetime of Fetzner who died in 1881,

and thence in Mentzel and his assigns down to the date of the institution of this suit in 1906.

As against the plaintiffs' claim of title under the Statute of Limitations, the defendants, Mrs. Schall and Mrs. Young, assert that Mentzel's possession ended in 1879 and that he or those claiming under him did not take possession again until 1889, at which time the defendants were both married women and have remained so ever since.

This suit concerns the title to the south half of the lots mentioned; there was another suit of like nature filed at the same time by another plaintiff, A. A. McIninch, against the same defendants to quiet the title to the north half of these lots; the plaintiff in that suit claims title under Mentzel in the same way that the plaintiffs in this suit claim title, and the defendants, who are the same in both suits, claim as heirs of their grandfather Fetzner, and their defense in the McIninch suit is the same as in this. By agreement the two suits were tried by the court at the same time and on the same evidence and in like manner are submitted together here.

There are four lots mentioned in the pleadings, 21, 22, 23 and 24, but it appeared in evidence that lots 21 and 22 had been sold under a foreclosure sale under another mortgage (or deed of trust) given by Fetzner, and the title to those two lots under that foreclosure sale having been acquired by the plaintiffs, the finding and decree of the court as to those two lots were in their favor and there is no appeal from that part of the decree. As to the other two lots, 23 and 24, the decree was in favor of the defendants, Mrs. Schall and Mrs. Young, and the plaintiffs appealed. One Charles Klaubus is named in the petition as a defendant and he was brought in by an order of publication, but he did not appear and the decree is that he has no interest in the land; his one-third, if he had such, is decreed to the plaintiffs. We infer that there were

three heirs to Fetzner, namely, Klaubus, Mrs. Schall and Mrs. Young. The adverse possession of plaintiffs since 1889 would bar the right of Klaubus, who was not under any disability, and that probably accounts for his non-appearance in the case.

The court was requested to make a finding of the facts and did so. The material facts found by the court are as follows:

Benjamin Fetzner was the owner of the property. On March 1, 1872, Fetzner and wife executed the mortgage already mentioned; at that time the lots were inclosed by a fence and there were a few fruit trees on them, but no other improvements. In March, 1874, Mentzel acquired title under a foreclosure sale under a deed of trust executed by Fetzner to certain other property on which were situated a residence and a soap factory just across the street from the lots in question; he took possession of the property he so acquired and about the same time took possession also of the four lots mentioned in these pleadings, using these lots for pasturage purposes; he and his tenants remained in possession of these lots not exceeding five years. In the later years of the occupancy of these lots by Mentzel and his tenants the fence began to decay and continued to do so, so that in 1879 it had entirely disappeared, and from that time there was no visible evidence of ownership or occupancy of these lots until 1889.

Mentzel died in 1876; Fetzner died in 1881. In 1878 the children and heirs of Mentzel instituted a suit for partition of his real estate and included in their petition the lots in controversy in this suit. In that proceeding those lots were set apart to Mrs. Cornwell, one of the heirs of Mentzel. Fetzner was not a party to that suit nor were these defendants. The plaintiffs now hold whatever title Mrs. Cornwell acquired by that suit. In 1889 the plaintiffs and those under whom they claim took possession of the lots in

question and erected thereon four cottages, two on the north half, which is the part claimed by McIninch, the plaintiff in the other suit, and two on the south half, which is the part claimed by Hayes, the plaintiff in this suit, and have held adverse possession ever since. Defendants did not know of the erection of those improvements until after they were completed. The defendant Mrs. Schall was married in 1883, and her sister Mrs. Young in 1885, and have been so ever since. The court's conclusion of the law was that the instrument under which Mentzel went into possession was a mortgage, and that the two defendants, Mrs. Schall and Mrs. Young, were each entitled to one-third of lots 23 and 24, but that they had no right to any of the improvements. The plaintiffs excepted to the findings of facts and conclusions of law. The decree of the court was in accordance with those findings and conclusions and from that decree the plaintiffs appealed.

All the findings of facts were clearly sustained by the evidence. From 1879 to 1889 there was no actual possession of these lots. In so far, therefore, as the plaintiffs' claim rests on the Statute of Limitations, it must begin with the possession which they took in the early part of 1889, at which time Mrs. Schall and Mrs. Young were married women.

The plaintiffs' contention that after condition broken the mortgagee is entitled to possession and when he takes possession he may hold it until the debt is paid, is conceded, and it is so held in the following cases cited by appellants: Johnson v. Houston, 47 Mo. 227; Pease v. Pilot Knob Iron Co., 49 Mo. 124; Ailey v. Burnett, 134 Mo. 316. In those cases there was no question of the Statute of Limitations; but appellants' further contention that the Statute of Limitations does not begin to run against a mortgagee's right to foreclose when he is in possession, may, for sake of the argument, be also conceded, as held in

cases cited by appellant. In Fountain v. Bookstaver, 141 Ill. 461, l. c. 468, the court said that the mortgagee by taking possession was pursuing one of the recognized modes under the law for the collection of the mortgage debt, and while thus proceeding to collect the debt in a lawful manner the Statute of Limitations did not run. And so it was said in Den v. Wright, 7 N. J. L. 175, l. c. 178; see also 13 Am. & Eng. Ency. Law (2 Ed.), page 798. But what is said in those cases is said concerning a mortgagee who is in possession and holding possession for the purpose of collecting his debt; it has no application to one who is not in possession or who having taken possession abandons it. In 20 Am. & Eng. Ency. Law (2 Ed.), p. 1008, it is said: "A mortgagee lawfully in possession of mortgaged premises may abandon or surrender the possession, or, what is the same thing, acquiesce in the possession of the mortgagor or his successors, thereby indicating his surrender of the pledge." That is just what Mentzel did in this case; after he became the owner of the property on the other side of the street he took possession of these lots and held them in a rather loose way for a while and then abandoned them. The only use he or his tenant ever made of them was for a pasture, and the evidence was to the effect that the fence began to fall to pieces as early as 1875 or 1876 and had entirely disappeared in 1879. Appellants say that because both men are dead no one knows what the agreement or understanding between them was under which the possession was taken, therefore the presumption must be indulged that it was pursuant to Mentzel's right as mortgagee, and that is so; but what presumption must be indulged as to why the possession was abandoned? We must remember that this mortgage was not to secure a debt that Fetzner owed Mentzel, but to indemnify him against his contingent liability for his indorsement. There was no evidence tending to show that he had ever been

compelled to pay the debt or had ever acquired the right to foreclose the mortgage. The fact that he is presumed to have taken possession for the only purpose that the law gave him the right to take possession, that is, to collect the mortgage debt, naturally leads to the presumption that when he abandoned the possession he abandoned the purpose of trying to collect the debt in that way. Mentzel never acquired any record title except that of mortgagee, and neither he nor those who claim under him ever held possession long enough to prevent the Statute of Limitations from barring his right to foreclose the mortgage.

Plaintiffs cite authorities to maintain their proposition that when the right to foreclose is barred the right to redeem is also extinguished. That is a mere abstract proposition in this case, because no one is here seeking to foreclose and no one is seeking to redeem. If Mentzel and those claiming under him had held continuous possession from 1874 until the mortgagor's right to redeem had become barred by the Statute of Limitations we would have a different case to consider. Although Mentzel's possession began in the lifetime of defendant's grandfather, yet it ended also during his lifetime, and therefore the theory that the Statute of Limitations having begun to run in his lifetime continues to run against his heirs, notwithstanding their disability, has no application here.

Plaintiffs acquired no right as against these defendants by the possession begun in 1874 which ended in 1879, and the time that has elapsed since they took possession in 1889 does not impair the rights of the two married women.

Plaintiffs invoke the maxim that one who seeks equity must do equity, therefore defendants cannot have a judgment in their favor until they redeem the mortgage. But that maxim has no application here. These defendants have not come into court asking equitable relief, they have not come into court at all

voluntarily, but have been brought in by the process sued out by the plaintiffs and have been required to say what title if any they have to the property, and in answer thereto have only said that each of them has a legal title to one-third thereof which she inherited from her grandfather.

Plaintiffs also say that the defendants are so guilty of laches that a court of equity will not grant them equitable relief; but the fact is they are not asking any equitable relief, they are standing strictly on their legal title and asking only what the cold law gives them.

Whether the statutory proceeding under section 650, Revised Statutes 1899, is a suit in equity, as plaintiffs insist, or an action at law, makes no difference in this case in so far as the defendants' rights are concerned, because when a purely legal title is drawn into an equity case it is decided according to the rules of law. In such case equity follows the law.

As to the improvements put on the property in 1889, the evidence shows, and the court so found, that these defendants knew nothing of them until they were finished. Besides the decree of the court is that the defendants have no right to the improvements.

The trial court took the correct view of the case. The judgment is affirmed. All concur.